2019 PA Super 323

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA L. LEAP | : | |
| | : | |
| Appellant | : | No. 1674 EDA 2018 |

Appeal from the Judgment of Sentence April 10, 2018
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0002494-2015

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY DUBOW, J.:                                    **FILED OCTOBER 25, 2019**

Appellant, Joshua L. Leap, appeals from the April 10, 2018 Judgment of Sentence entered in the Monroe County Court of Common Pleas after a jury convicted him of Rape and related charges.  After careful review, we affirm.

## BACKGROUND

The relevant factual and procedural history, as gleaned from the certified record, is as follows.  In July 2015, then-14-year-old B.L. ("Victim") attended an overnight family reunion with her then-15-year-old boyfriend, M.B.K. ("Boyfriend").  Appellant is Boyfriend's cousin and was 28 years old at the time of the family reunion.  At the reunion, Victim and Boyfriend consumed alcohol, smoked marijuana, and then went to sleep in a tent around midnight.

Around 4:00 AM, Victim awoke to find Appellant on top of her.  Appellant pulled Victim's pants down, pinned her to the ground, put his hand over her mouth, and raped her.  After Appellant raped Victim, he spoke to her about

_____

*   Former Justice specially assigned to the Superior Court.

the rape.[1]  Victim disclosed the rape to another cousin, who, in turn, told Boyfriend.  Later that day, Appellant told Victim and Boyfriend that he would give them marijuana, or whatever they wanted, if they did not say anything to get him in trouble.

Upon returning home, Victim told her mother about the rape.  Victim's mother called police and took Victim to the hospital, where Victim received a sexual assault examination.  The examination and DNA testing revealed that Appellant's semen was on Victim's clothes and inside Victim's vagina.  Victim gave consistent statements to hospital personnel and the police.

Police arrested Appellant and the Commonwealth charged Appellant with Rape, Statutory Sexual Assault, Sexual Assault, Aggravated Indecent Assault, and Indecent Assault.[2]  After a preliminary hearing on November 20, 2016, the court held the case over for trial.

At trial, Victim testified to the above facts.  On cross-examination, Appellant tried to impeach Victim with a post that appeared on Victim's Facebook page.  The post was a picture of a typed sentence that was authored by an unknown individual, reposted by someone uninvolved in this matter over a year before Victim accused Appellant of rape, and reposted on Victim's Facebook page on or around the date of the scheduled preliminary hearing.

_____

[1] Victim testified that Appellant told her that her "pussy was so tight and he's never come that fast."  N.T. Trial, 1/9/18, at 45.

[2] 18 Pa.C.S. §§ 3121(a)(1), 3122.1(b), 3124.1, 3125(a)(2), and 3126(a)(2), respectively.

The post stated, "If we have sex & your behavior changes afterwards I'm gonna say you raped me & technically you did bc you ain't the nigga I thought you was." Defendant's Exhibit 11, Marked for Identification Purposes. The trial court sustained the Commonwealth's objection to the use of the Facebook repost. N.T. Trial, 1/9/18, at 82.

The Commonwealth next presented testimony from Carol Haupt, who was qualified to testify as an expert in the dynamics of sexual violence, victim responses to sexual violence, and the impact of sexual violence on victims during and after being assaulted pursuant to 42 Pa.C.S. § 5920. When the Commonwealth asked Ms. Haupt a hypothetical question about a 14-year-old victim, Ms. Haupt gave her opinion about the hypothetical child's credibility. *Id.* at 141.[3]

Appellant objected on the basis that Section 5920 specifically disallows any testimony giving an opinion on credibility, and made a Motion for a

_____

[3] Specifically, the Commonwealth asked Ms. Haupt if she knew statistics regarding false reporting of sexual assaults, and Ms. Haupt responded with an analogy. Ms. Haupt analogized making reports of sexual abuse to an iceberg, with the number of actual sexual assaults being under water and the number of reported sexual assaults being towards the tip of the iceberg. N.T. Trial, 1/9/18, at 138-39. The Commonwealth later inquired, "Hypothetically, if a fourteen year old had consistently given statements with regards to a rape that occurred; you know, they gave a statement to a trooper, to a SA[F]E nurse and then at preliminary hearing and then two years later at a trial and they were consistent that, hypothetically, then that person would be part of that tip [of the iceberg]." *Id.* Ms. Haupt responded, "Well it seems to make them credible." *Id.*

Mistrial. The trial court denied Appellant's Motion and, instead, gave a curative instruction telling the jury members that they were the sole judges of the credibility of all witnesses and they should disregard any testimony that they construe to be an opinion in that regard.[4] *Id.* at 142-43.

The Commonwealth called several additional witnesses, including a Police Communications Officer, two police Troopers, a nurse practitioner, a serology supervisor, and a forensic DNA scientist.

Appellant testified on his own behalf and stated, *inter alia*, that, on the day of the reunion he thought Victim was 18 years old. N.T. Trial, 1/11/18, at 92. Appellant acknowledged that he went to sleep in the same tent as

---

[4] Specifically, the trial court gave the following curative instruction to the jury:

> So members of the jury, when I was giving you my preliminary instructions I told you that I was the judge of the law and I'd be giving you the law. I also told you that you were the judges of the facts. As the sole judges of the facts individually and collectively you are also the sole judges of the credibility of all witnesses and that's true whether the witness is labeled as an expert, as a lay witness, or any other type of witness. And so you and you alone are the judges of the credibility of anyone who testifies here in court and there is no other witness, expert or otherwise, who may take that function away from you. And so you just heard what may be construed as an opinion in that regard and you must disregard that in your deliberations and draw your own assessments based on the evidence, the law that I'm going to give you, and as I said before you may listen to the arguments of the attorneys in the end and you may give them some weight if those arguments are supported by the facts and appeal to your sense of reason and judgment.

*Id.* at 143.

Victim and Boyfriend and stated that he woke up early in the morning to move into a nearby house to sleep because he was cold. *Id.* at 84-119. Appellant testified several times, on both direct and cross-examination, that he did not remember anything between the time he fell asleep in the tent and the time he woke up. *Id.*

Appellant also called various fact and character witnesses, including his ex-fiancé Erin Labar, to testify on his behalf. Appellant once again tried to introduce the above-referenced Facebook post, by asking Ms. Labar if she observed Victim's Facebook posts. *Id.* at 51. The trial court once again sustained the Commonwealth's objection to the use of the Facebook repost and ruled it inadmissible. *Id.* at 56.

On January 11, 2018, a jury convicted Appellant of all charges. On April 10, 2018, the trial court sentenced Appellant to an aggregate term of 90 to 244 months' incarceration and ordered, *inter alia*, that Appellant was not to have unsupervised contact with anyone under the age of 18. Appellant filed a timely Post-Sentence Motion, which the trial court granted in part to modify the sentencing condition to allow Appellant to have contact with his own children. The trial court denied the remainder of the Motion.

Appellant timely appealed. Appellant and the trial court both complied with Pa.R.A.P. 1925.

**ISSUES**

Appellant raises the following issues on appeal.

1. Did the trial court abuse its discretion by sustaining the Commonwealth's objection to the introduction of [Victim]'s Facebook post which suggested that [Victim] had consensual sex with [Appellant] and indicated a willingness to lie about being raped by him?

2. Should Defendant's Motion for a Mistrial have been granted after the jury heard inadmissible and incurably prejudicial testimony from the Commonwealth's Expert Witness who testified upon prompting by the Commonwealth as to credibility of a rape victim's testimony.

Appellant's Brief at 7.

**LEGAL ANALYSIS**

**Issue 1**

In his first issue, Appellant avers that the trial court abused its discretion when it precluded Appellant from introducing a post from Victim's Facebook page into evidence. Appellant's Br. at 15. Appellant argues that the post was evidence of Victim's bias against Appellant and her intention to testify falsely against Appellant and that he should have been able to cross-examine Victim regarding the post. *Id.* at 17-18. Appellant contends that the preclusion left him without a crucial piece of evidence to support his theory of the case that Victim "mistakenly had consensual sex" with Appellant and when Boyfriend found out, she claimed that Appellant had raped her. *Id.* at 15-18.

Our standard of review is well settled: the admissibility of evidence is within the sound discretion of the trial court and we will not reverse absent an abuse of discretion. *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015). Likewise, the scope and limits of cross-examination are within the discretion of the trial judge and we review the trial judge's exercise of

judgment for a clear abuse of discretion. ***Commonwealth v. Birch***, 616 A.2d 977, 978 (Pa. 1992). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Poplawski***, 130 A.3d at 716 (citations omitted).

Relevance is the threshold for admissibility of evidence; evidence that is not relevant is not admissible. ***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008); Pa.R.E. 402. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Drumheller***, 808 A.2d 893, 904 (Pa. 2002) (citation omitted). Our Rules of Evidence provide the test for relevance: evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Further, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Under Rule 607, "[t]he credibility of a witness may be impeached by any evidence **relevant to that issue**[.]" Pa.R.E. 607(b) (emphasis added). The Comment to Rule 607 further emphasizes that any evidence offered to

impeach the credibility of a witness must be relevant under the Rule 401 relevancy test. Pa.R.E. 607 cmt. In addition, Rule 608 provides that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Pa.R.E. 608(a). However, "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of a witness'[s] conduct[.]" Pa.R.E. 608(b)(1). *See Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa. Super. 2004) (noting defendant's right to confrontation includes the right to cross-examine witnesses about possible motives to testify, however, a party may not impeach a witness on collateral matters, or matters that have no relationship to the case at trial).

Instantly, the trial court found the Facebook post to be irrelevant and highly prejudicial, and, therefore, ruled the post to be inadmissible for impeachment purposes pursuant to Rule 607 and Rule 608. The trial court opined:

> [B]ecause the words were not [V]ictim's, the language of the post did not relate to [V]ictim's reputation for truthfulness or untruthfulness, the post was generated 13 months before the sexual assault on [V]ictim, the post does not relate to the events that gave rise to or the persons involved in this case, the original author is unknown, neither [Appellant] nor [V]ictim was mentioned, identified, or referenced in the post, and counsel for [Appellant] did not provide context for the post, the post is irrelevant. For the same reasons, to the extent relevance may be found, the prejudicial impact of the post, to both the Commonwealth and [V]ictim, outweighed its probative value.

Trial Ct. Op., filed 8/31/18, at 11.

We find no error in the trial court's conclusion that the Facebook post— a picture of a typed sentence, authored by an unknown individual, reposted by someone uninvolved in this matter over a year before Victim accused Appellant of rape, and reposted on Victim's Facebook page on or around the date of the preliminary hearing—is not relevant, and therefore, not admissible. Once the trial court found the Facebook post to be irrelevant, the court properly exercised its discretion in ruling that Appellant could not impeach Victim with that evidence. *See Cook*, 952 A.2d at 612; *Guilford*, 861 A.2d at 369. Accordingly, we find no abuse of discretion.[5]

**Issue 2**

In his second issue, Appellant avers that the trial court abused its discretion when it denied his Motion for a Mistrial after expert witness Ms. Haupt gave her opinion about the credibility of a hypothetical rape victim. Appellant's Br. at 27. Appellant argues that the expert's testimony impermissibly bolstered Victim's credibility, and the instruction given by the trial judge was not sufficient to cure the inadmissible and prejudicial

---

[5] Appellant's one-paragraph arguments that the trial court should have admitted the Facebook post as a then-existing mental state pursuant to Pa.R.E. 803(a), or a prior inconsistent statement, are underdeveloped. *See* Appellant's 20-22. Accordingly, we find them waived. *See Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018) (holding that this Court will not develop an argument for an appellant, nor scour the record to support an argument, and instead will find the underdeveloped argument to be waived).

testimony.  *Id.* at 27.  Therefore, Appellant contends, he was deprived of the right to a fair and impartial trial.  *Id.* 31.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion.  *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013).  A mistrial is an extreme remedy that is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict."  *Id.* (citations omitted).  "It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial."  *Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*) (citations omitted).  When a trial court gives adequate cautionary instructions to the jury, it is not necessary for the court to declare a mistrial.  *Bryant*, 67 A.3d at 728.  "The law presumes that the jury will follow the instructions of the court."  *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001).

Instantly, there is no dispute that the testimony in question was impermissible under Section 5920, which, *inter alia*, allows an expert testifying under this Section in certain criminal proceedings to give opinions regarding specific types of victim responses and victim behaviors, but prohibits the expert's opinion regarding the credibility of any witness, including the victim.  *See* 42 Pa.C.S. § 5920(b); *Commonwealth v. Seese*, 517 A.2d 920, 922 (Pa. 1986) (holding it was error to admit expert testimony as to the credibility of children who are of an age similar to that of the

prosecution's chief witness, the crime victim). The question before this Court is, thus, whether the trial court's curative instruction was sufficient to overcome the potential prejudice to Appellant. We find that it was.

As the trial court emphasized, the curative instruction did not stand alone; it was "bookended by preliminary instructions, which were referenced in the curative instruction itself, and instructions given as part of the final charge which also operated to remove or alleviate any potential taint." Trial Ct. Op. at 20. The trial court instructed the jurors on multiple occasions throughout the trial that they were the sole judges of the facts and sole judges of the credibility of all witnesses and the weight of the evidence. *Id.* We presume that the jurors followed the trial court's instructions and decline to find that Ms. Haupt's one-sentence opinion regarding the credibility of a hypothetical victim deprived Appellant of a fair trial. *See Brown*, 786 A.2d at 971.

Appellant cites *Seese, supra*, and *Commonwealth v. Maconeghy*, 171 A.3d 707 (Pa. 2017), to support his argument that he was deprived of the right to a fair and impartial trial because of Ms. Haupt's opinion about the credibility of a hypothetical rape victim. Appellant's Br. at 28-30. However, we can easily distinguish these cases: unlike in this case, the trial court did not give a curative instruction to the jury in either of those cases. Accordingly, Appellant's argument is unpersuasive.

Upon review of the record, including the brief nature of the reference, the court's prompt instruction, and our standard of review, we find no error in

the denial of a mistrial. The curative instruction set out above was sufficient to overcome any potential for prejudice. The trial court did not abuse its discretion and Appellant is not entitled to relief on this issue.

**CONCLUSION**

In sum, the trial court did not abuse its discretion when it found the Facebook post to be irrelevant and ruled that Appellant could not use the post to impeach Victim. Moreover, the trial court did not abuse its discretion when it denied Appellant's Motion for a Mistrial.

Judgment of Sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/19