J-S47027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM M. VELASQUEZ | : | |
| | : | |
| Appellant | : | No. 2017 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 17, 2019
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000625-2018

BEFORE:   STABILE, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 09, 2021**

Appellant William M. Velasquez appeals *pro se*[1] from the judgment of sentence imposed after a jury found him guilty of committing aggravated indecent assault—personal less than sixteen years of age and three counts of indecent assault—person less than sixteen years of age against the complainant, E.B.[2]  Appellant claims that the trial court allowed perjured and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court found that Appellant's decision to proceed *pro se* in this appeal was knowing, intelligent and voluntary.  **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) (setting forth the procedure to determine on the record that a defendant wishing to proceed *pro se* is knowingly, intelligently, and voluntarily waiving the right to counsel).

[2] 18 Pa.C.S. §§ 3125(a)(8) and 3126(a)(8), respectively.  At trial, the parties agreed, and the trial court instructed the jury, that the three counts of indecent assault concerned separate incidents, specifically, one incident in the Fall of 2015 and two incidents in the Fall of 2017.

coached testimony at trial and erred by failing to grant him a new trial. Appellant also challenges the rulings that (1) granted the Commonwealth's motion *in limine* to admit Appellant's nearly forty-year-old robbery conviction, (2) allowed the Commonwealth to ask hypothetical questions to its expert witness in violation of a pretrial order, (3) allowed testimony regarding the complainant's demeanor at school, and (4) imposed an illegal mandatory minimum sentence in violation of **Alleyne v. United States**, 570 U.S. 99, 103 (2013). We affirm.

On February 16, 2018, the Commonwealth charged Appellant with committing sexual offenses against the complainant, from the time the complainant was eleven or twelve years old until she reported the abuse in December 2017.[3] Of relevance to this appeal, the Honorable Brian Marshall decided the parties' pre-trial motions, and the pre-trial court (1) granted the Commonwealth's motion to admit evidence of Appellant's 1978 conviction for robbery as *crimen falsi* if Appellant testified at trial, (2) granted, in part, Appellant's motion to limit the testimony of the Commonwealth's expert, Dr. Veronique Valliere, by requiring the Commonwealth to inform the trial court of hypothetical questions before asking her to opine on the hypothetical, and (3) denied Appellant's motion to preclude testimony from the complainant's teachers and school counselor to testify regarding complainant's behavioral changes following the abuse. **See** Pre-Trial Op. & Order, 11/15/18, at 6-7.

---

[3] The complainant was fourteen years old when she reported the abuse.

- 2 -

At the jury trial before the Honorable Katherine Oliver, the Commonwealth presented testimony from the complainant, the complainant's sister, Dr. Valliere, and the complainant's teachers and school counselor, among other evidence. Following a colloquy, Appellant elected not to testify.[4] On May 29, 2019, the jury found Appellant guilty of the above-mentioned offenses.[5]

On April 9, 2019, the Commonwealth filed notice of intent to seek a mandatory minimum sentence pursuant to Section 9718.2(a)(1). According to the Commonwealth, Appellant's previous conviction for a sexual offense in Florida constituted a predicate crime.[6]

The trial court held a sentencing hearing on July 16, 2019, at which it determined that Appellant's previous Florida conviction constituted an

---

[4] During the colloquy, Appellant explained that "it was not that [he did not] want to testify" but that his criminal record could be misconstrued. N.T., 3/29/19, at 36.

[5] Private counsel, Andrew Shubin, Esq. (trial counsel), represented Appellant throughout the pre-trial and trial proceedings. Attorney Shubin withdrew from representing Appellant before sentencing with the leave of the trial court. Assistant Public Defender Elizabeth Ramos, Esq., represented Appellant at sentencing.

[6] The Commonwealth also filed a separate notice of appeal for application of the mandatory minimum sentence based on Appellant's prior convictions for multiple crime of violence pursuant to Section 9714.

equivalent offense under Section 9718.2.[7]  The trial court sentenced Appellant to an aggregate sentence of twenty-six to fifty-two years' imprisonment.[8]

Appellant timely filed post-sentence motions and a supplemental post-sentence motion.  The trial court entered an opinion and order denying Appellant's post-sentence motions.  Post-Sentence Op. & Order, 11/19/19.

Appellant thereafter sought leave to proceed *pro se*, which the trial court granted.  On December 6, 2019, Appellant timely filed a *pro se* notice of appeal[9] and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement.  The trial court filed its Rule 1925(a) opinion relying on its November 19, 2019, opinion and order denying Appellant's post-sentence motions and briefly addressed Appellant's claim that the complainant's sister committed perjury in that her mother coerced and coached the sister's testimony.  Rule 1925(a) Op., 1/17/20.

---

[7] The trial court also determined that it was authorized to impose a twenty-five to fifty-year sentence based on Appellant's prior convictions for crimes of violence under Section 9714.

[8] The trial court imposed a mandatory minimum sentence of twenty-five to fifty years for aggravated indecent assault—personal less than sixteen years of age and a consecutive sentence of one to two years for one of the three counts of indecent assault—person less than sixteen years of age. The trial court imposed concurrent sentences of one to two years each on the remaining two counts of indecent assault—person less than sixteen years of age.

[9] Attorney Ramos filed a motion to withdraw as counsel on December 10, 2019, which the trial court granted on December 12, 2019, following a hearing.  The trial court also determined that Appellant's exercise of his right to self-representation was knowing, intelligent, and voluntary and appointed Attorney Ramos as stand-by counsel.

Appellant presents the following questions in his *pro se* appellate brief:

1. Did the trial court err or abuse its discretion in failing to *sua sponte* stop Appellant's trial proceedings upon hearing [complainant's sister's] testimony that she had been coerced, coached, and suborned to commit perjury against Appellant as to having witnessed Appellant's alleged criminal conduct and whether (1) hold a hearing outside the presence of the jury to inquire into such misconduct, or (2) immediately declare a mistrial?

2. In light of the multiple witnesses called to testify by the Commonwealth during Appellant's trial, was the use of Appellant's 40 year old robbery conviction to threaten him with impeachment should he call the only witness available to testify for the defense—himself—more prejudicial to him than probative for the Commonwealth; and if so, did the trial court err or abuse its discretion in allowing such impeachment of the defense's only witness?

3. Is the deliberate disobedience of a court order done in bad faith *per se*; and, if so, was the Commonwealth's deliberate disobedience of the trial court's order in re Appellant's pretrial motion *in limine* as to the use of a hypothetical scenario and line of questioning done in bad faith?  Was the use of such hypothetical too speculative and/or did it impermiss[i]bly [bolster the credibility of the [complainant] and/or further prejudice Appellant by inflaming the jury against him through the power of suggestion?

4. Did the testimony of the school teachers called by the Commonwealth to testify as to the [complainant]'s post-incident mental well-being and academic performance too speculative and impermiss[i]bly bolster the credibility of the [complainant]; and, if so, did the trial court err or abuse its discretion in allowing such testimony at Appellant's trial?

5. Did the [trial] court err in sentencing Appellant pursuant to 42 Pa.C.S.[ §] 9718.2?

Appellant's Brief at 5-6 (some formatting altered).

**Complainant's Sister's Perjury**

- 5 -

In his first issue, Appellant contends that the complainant's sister perjured herself and that the trial court violated his due process rights by failing to take remedial measures. Appellant's claim arises from the following testimony exchanges at trial with the complainant's sister:

> [Commonwealth]. Did you ever see [Appellant] give [the complainant] a kiss?
>
> [Complainant's Sister]. Yes.
>
> [Commonwealth]. Did you ever see [Appellant] kiss [the complainant] in a way that you thought was unusual?
>
> [Complainant's Sister]. Yes.
>
> [Commonwealth]. Can you describe that for us?
>
> [Complainant's Sister]. He would lean in and kiss her and then he would touch his tongue to her tongue.

N.T., 3/29/19, at 8-9.

Appellant's trial counsel cross-examined the complainant's sister using her prior statement that "[the complainant's sister] didn't see him do anything but [her] mom told [her] that he did stuff." *Id.* at 11. The complainant's sister agreed that she recalled giving this prior statement. *Id.*

On appeal, Appellant asserts that that the complainant's sister perjured her testimony and that her mother coerced or coached her to do so.[10]

_____

[10] We note that Appellant's brief appears to cite from a transcript of the complainant's sister's prior statement at the Children's Advocacy Center (CAC), an excerpt of which Appellant attached to his motion *in limine*. *See* Appellant's Brief at 12-13. Appellant did not move to admit any portion of the CAC transcript into evidence at trial, and it is not otherwise contained in the certified record transmitted to this Court.

Appellant's Brief at 13. Appellant contends that trial court should have declared a mistrial *sua sponte* or taken other measure to address the perjured testimony. ***Id.*** at 13-14. Appellant concludes that he is entitled to a new trial. ***Id.*** at 14.

The Commonwealth responds that Appellant failed to preserve his claim that the complainant's sister's testimony was perjured or coached by failing to raise it at trial. Commonwealth's Brief at 9. Alternatively, the Commonwealth asserts that claim is "wholly without merit." ***Id.***

The trial court, in its Rule 1925(a) opinion concluded that Appellant's issue lacked merit. Specifically, the trial court found that the record contradicted Appellant's characterization of the complainant's sister's testimony and concluded that the complainant's sister "did not testify that she had been 'coerced, coached, and suborned to commit perjury.'" Rule 1925(a) Op., 1/17/20, at 1.

"It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision." ***Commonwealth v. Kelly***, 797 A.2d 925, 936 (Pa. Super. 2002) (citations omitted). Further, it is well settled that

> [t]he prosecution may not knowingly and deliberately misrepresent the evidence in order to gain a conviction. Nevertheless, a claim of purposeful prosecutorial misrepresentation will not stand if examination of the record fails to reveal any indication of deceptive tactics on the part of the prosecution. Minor discrepancies in the Commonwealth's case will not be considered false evidence.

*Commonwealth v. Ali*, 10 A.3d 282, 294 (Pa. 2010) (citations omitted).

Instantly, our review of the record confirms that Appellant did not preserve his claim that the complainant's sister's testimony was perjured or that the Commonwealth knowingly presented false evidence. Appellant did not object to the complainant's sister's testimony at trial, did not claim perjury, and did not move for mistrial. To the contrary, Appellant's trial counsel used the complainant's prior statements to impeach the credibility of her account of seeing Appellant kiss the complainant using his tongue. Accordingly, Appellant's claim is waived. *See* Pa.R.A.P. 302(a).

In any event, the record does not support Appellant's conclusory arguments that the complainant's sister perjured herself, that her mother suborned the perjury, or that the Commonwealth knowingly and deliberately presented false testimony. Instead, the inconsistencies in the testimony concern issues of credibility for the jury to decide. *Cf. Commonwealth v. Lynn*, 192 A.3d 194, 201 (Pa. Super. 2018) (discussing a claim that retrial should be barred because the Commonwealth presented a witness that it knew would lie and noting that "inconsistencies in evidence, in and of themselves, do not equate to the introduction of false evidence" (citation omitted)). For these reasons, we discern no abuse of discretion in the trial court's conclusion. Accordingly, Appellant's first claim merits no relief. *See Kelly*, 797 A.2d at 936.

**Appellant's Prior *Crimen Falsi* Conviction**

In his second issue, Appellant contends that the trial court erred in ruling that his 1978 conviction for robbery could be admitted as *crimen falsi* if Appellant testified at trial. Appellant's Brief at 15. Appellant asserts that the trial court erred in its pre-trial ruling that the probative value of this prior conviction outweighed its prejudicial effect to his defense at trial. *Id.* at 17. Specifically, Appellant contends that "[w]hile a prior robbery would be a crime of *crimen falsi*, the age of the alleged robbery should have precluded it from being used at trial." *Id.* at 15. Appellant further notes that he did not testify at trial because his prior robbery conviction could be admitted. *Id.* at 17.

The Commonwealth counters that the trial court did not abuse its discretion. Commonwealth's Brief at 10-11. The Commonwealth asserts that the trial court properly considered all relevant factors when admitting *crimen falsi* evidence based on the conviction being older than ten years. *Id.*

Our Supreme Court summarized the applicable standard of review as follows:

> "When reviewing the denial of a motion *in limine*, this Court applies an evidentiary abuse of discretion standard of review. . . . It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. A determination that a trial court abused its discretion in making an evidentiary ruling "may not be made 'merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.'" Further, discretion is abused when the law is either overridden or misapplied.

*Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014) (citations omitted).

Pennsylvania Rule of Evidence 609 states, in relevant part:

**(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later.  Evidence of the conviction is admissible only if:

(1) its probative value substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(b).

Rule 609(b) incorporates the following test summarized by our Supreme Court in *Commonwealth v. Randall*, 528 A.2d 1326 (Pa. 1987):

In making the determination as to the admissibility of a prior conviction for impeachment purposes, the trial court should consider: [1]] the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; [2]] the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

- 10 -

*Randall*, 528 A.2d at 1328 (citation omitted); Pa.R.E. 609 cmt.; *Hoover*, 107

A.3d at 731.

Instantly, trial court, in its pre-trial ruling, cited Rule 609(b) and

*Hoover*, and addressed the admissibility of Appellant's 1978 conviction for

robbery as follows:

Although this conviction is forty (40) years old, the [c]ourt does find that it reflects on [Appellant]'s veracity. [Appellant] spent most of the years after this conviction incarcerated for various offenses. Though none of those other offenses were crimes of dishonesty, [Appellant] has spent less than ten (10) of those years outside of prison. The length of time between the 1978 conviction and the time of trial does not necessarily indicate that [Appellant] has reformed.

The 1978 conviction was for robbery and [Appellant] is preparing to stand trial for sexual offenses. The [c]ourt finds it is unlikely that [Appellant's] robbery conviction would suggest to the jury that [Appellant] has a propensity that would cause him to commit sexual offenses as well. As these charges are sufficiently different, the [c]ourt finds this factor weighs in favor of admitting the robbery conviction.

The robbery conviction is quite old, which weighs against admitting the conviction into evidence. However, the circumstances of [Appellant] have not significantly changed. [Appellant] has spent most of the time since that conviction in prison for various offenses. Therefore, the [c]ourt finds this factor weighs slightly in favor of admitting the conviction.

The [c]ourt heard little testimony about the strength of the prosecution's case. The Commonwealth indicated that this case will come down to the credibility of the [complainant], who is a minor, weighed against the credibility of the adult [Appellant]. Although the [complainant's] sister witnessed some portion of the alleged conduct, the [c]ourt is aware of no other eyewitnesses who would be able to provide the jury with more information about whether the alleged acts occurred. Therefore, the [c]ourt finds this factor weighs in favor of admitting the conviction.

Finally, the [c]ourt must analyze whether the Commonwealth has any other means of attacking [Appellant]'s credibility. The [c]ourt is aware of no other means to attack [Appellant's] credibility. As previously addressed, the only other witness to the events would be the [complainant's] sister and it appears her knowledge is limited.

After review of all five factors, the [c]ourt finds that [Appellant's] 1978 robbery conviction is admissible as impeachment evidence against [Appellant].

Pre-Trial Op. & Order, 11/15/18, at 2-3.

Based on the foregoing, we discern no merit to Appellant's claim. Although Appellant contests the trial court's weighing of the probative value of his prior conviction based solely on the age of the offense and his allegation that the ruling impacted his decision not to testify, *see* Appellant's Brief at 17, the pre-trial court thoroughly considered all factors relevant to the admission of the prior *crimen falsi* conviction. *See* Pre-Trial Op. & Order, 11/15/18, at 2-3. We acknowledge that the age of a prior conviction is one factor that should be considered by a court. However, Appellant's challenge fails to establish that that the pre-trial court abused its discretion when weighing all of the factors. Therefore, Appellant has not established an abuse of discretion in the ruling on the Commonwealth's proffer under Rule 609(b), *Randall*, and *Hoover*. *See Hoover*, 107 A.3d at 729. Accordingly, no relief is due.

## Hypothetical Questions

In his third issue, Appellant claims that the Commonwealth violated the pre-trial ruling requiring the Commonwealth to inform the trial court of the hypothetical questions it intended to ask Dr. Valliere, its expert on the

- 12 -

dynamics of sexual violence and the impact on sexual victims. Appellant's Brief at 18. Appellant further contends that the Commonwealth's questions were prejudicial because the involved facts were "too similar to the case at issue" and resulted in testimony that improperly bolstered the complainant's credibility. *Id.* at 19.

The Commonwealth responds that it did not violate the pre-trial order. Commonwealth's Brief at 12. The Commonwealth contends that it did not pose hypothetical questions to Dr. Valliere but focused her testimony to specific types of victim responses and behaviors. *Id.* Alternatively, the Commonwealth argues that the trial court properly concluded that it did not act in bad faith and that its questions were proper. *Id.*

This Court summarized the principles relevant to our review as follows:

> A motion *in limine* is a pre-trial application before a trial court made outside the presence of a jury, requesting a ruling or order from the trial court prohibiting the opposing counsel from referring to or offering into evidence matters so highly prejudicial to the moving party that curative instructions cannot alleviate an adverse effect on the jury.

*Commonwealth v. Padilla*, 923 A.2d 1189, 1193-94 (Pa. Super. 2007) (citation omitted). The trial court has the discretion to determine whether the defendant was prejudiced by a violation of a pre-trial order. *Id.* at 1192. The trial court also has the discretion to rule on an objection to the form of questioning. *See Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 885 (Pa. Super. 2019), *appeal denied*, 221 A.3d 644 (Pa. 2019).

"It is well-settled that expert testimony on the issue of a witness's credibility is impermissible, as it encroaches on the province of the jury to make such determinations." **Commonwealth v. Jones**, 240 A.3d 881, 896 (Pa. 2020) (citations omitted). Historically, Pennsylvania courts took a restrictive approach to the use of expert testimony on matters concerning a complainant's credibility. **Commonwealth v. Maconeghy**, 171 A.3d 707, 713 (Pa. 2017). For example, Pennsylvania courts disapproved of "expert testimony concerning general characteristics of sexual assault victims . . . on the grounds that it invades the province of the jury." **Id.** (citation omitted).

Section 5920 of Title 42 currently governs the admission of expert testimony regarding the dynamics of sexual violence and, in relevant part, provides:

> **(b) Qualifications and use of experts.—**
>
> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.
>
> (2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.
>
> (3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

42 Pa.C.S. § 5920(b)(1)-(3).

In **Commonwealth v. Cramer**, 195 A.3d 594 (Pa. Super. 2018), this Court addressed the defendant's claims that an expert's testimony improperly bolstered a complainant's credibility "'under the guise of educating the jurors on the varying reactions to sexual violence[.]'"[11]  **Cramer**, 195 A.3d at 608. In **Cramer**, the Court concluded that the expert's testimony "did not run afoul of Section 5920[]" because the expert did not offer an opinion of the complainant's credibility or that the complainant's response to the assault at issue in that case "was normal."  **Id.**  The **Cramer** Court added that

> [t]he Commonwealth did not provide [the expert] with a factual account of the allegations against [the defendant], and [the expert] testified without knowing anything about the allegations, the [complainant], or [the defendant] in order to comply with Section 5920.  Moreover, the Commonwealth's questions in this case were general and generic enough that [the expert]'s testimony did not bolster the [complainant]'s testimony as [the defendant]'s claims.

**Id.** (footnote omitted).

In **Commonwealth v. Leap**, 222 A.3d 386 (Pa. Super. 2019), *appeal denied*, 233 A.3d 677 (Pa. 2020), this Court considered a claim based on an improper hypothetical question.  In **Leap**, the Commonwealth asked:

> "Hypothetically, if a fourteen year old had consistently given statements with regards to a rape that occurred; you know, they gave a statement to a trooper, to a SA[F]E nurse and then at preliminary hearing and then two years later at a trial and they were consistent that, hypothetically, then that person would be part of that tip [of the iceberg]."

---

[11] **Cramer** also involved testimony from Dr. Valliere.  **Cramer**, 195 A.3d at 608.

*Leap*, 222 A.3d at 388 n.3 (record citation omitted). The expert responded, "'Well, it seems to make them credible.'" *Id.* (record citation omitted). The defendant objected and requested a mistrial, which the trial court denied. The trial court, however, issued cautionary and curative regarding the jury's consideration of the complainant's credibility.

The *Leap* Court disapproved of the Commonwealth's use of hypothetical questions that elicited an expert's testimony that a complainant was credible. *See id.* Nevertheless, the Court rejected the defendant's argument that the exchange necessitated a new trial concluding that "[t]he curative instruction . . . was sufficient to overcome any potential for prejudice." *Id.* at 392.

Instantly, the record shows that the following exchange occurred after the Commonwealth qualified Dr. Valliere as an expert.

> [Commonwealth]. Before I begin further questions I want to give you a brief context for your answers to these questions. Assume that the sexual assaults in question that we will be discussing took place over a roughly two-year period on a female child who was between the ages of 12 and 14. Okay?
>
> [Appellant's Counsel]: Judge, objection to the hypothetical. This witness may not be used to bolster the credibility by giving this witness--
>
> The Court: Okay. Excuse me. Counsel, approach.
>
>   (Whereupon, the following conversation was held at side bar:)
>
> The Court: Let me just also say that I assumed before we started with the hypothetical that this had been worked out in advance. I think this was the one thing that you know, I was not the limine judge, but it was my understanding that had been addressed with the [pre-trial c]ourt before we started.
>
> So why are you giving her these specific --

- 16 -

[Commonwealth]: I am not --

The Court : -- parameters?

[Commonwealth]: I am not asking [Dr. Valliere] to opine on a specific factual scenario, but at the same time if I say victim of sexual assault and ask her to give educational testimony on reactions, et cetera, she has to have some sense of the context .

The Court: Yeah. But it can't be specific to this case.

[Commonwealth]: It's not.

\* \* \*

[Commonwealth]: The context is [to] assume the sexual assaults in question took place over a roughly two-year period on a female child who was between the ages of 12 and 14. The alleged assaults--

The Court: Keep your voice down please.

[Commonwealth]: The alleged assaults involved indecent touching and digital penetration but not intercourse. I think I need to orient her so --

The Court: I think we can have this witness testify without that kind of orientation. I think that's getting very close to giving her the claim to facts in this case and then asking her her opinions. Why do you need to do that?

[Commonwealth]: Her testimony there is a difference between a child's reaction to full blown intercourse, and indecent touching, and digital penetration.

The Court: Okay. Well, that's very different from what you just laid out.

\* \* \*

The Court: I am not telling you to do that. I am just telling you to make it less case specific. I am sure you can do that.

\* \* \*

[Commonwealth]: I need some guidance from the [c]ourt on how I can orient her. I have a 12- to 14-year-old child and I have indecent touching and digital penetration. Those are three facts. May I proceed with that?

- 17 -

[Appellant's Counsel]: Judge, I am objecting because the facts are exactly the facts in this case. I don't --

The Court: Yeah. Does she say -- I am sorry to interrupt you, but this is nowhere in her report that she needed those facts.

[Commonwealth]: This is educational testimony.

The Court: Yeah. I get it. I get it.

[Commonwealth]: We don't give her facts upfront.

The Court: Well, then you don't give them to her in front of a jury either.

[Commonwealth]: I have to orient her in some respect. Judge, I am asking for a minimum set of parameters on the basis of which to conduct my direct examination of this witness.

The Court: Yeah. I am not the lawyer. You are. I am just telling you that you are skating very close to impermissible opinion testimony here. If you want to create an appeal issue for yourself, so be it, but try make that a little more generic.

[Appellant's Counsel]: Judge, for the record, is the objection overruled or sustained?

The Court: What's your proffer? What exactly are you going to ask her by way of hypothetical? I have already told you that I think what you just said is too specific. You gave the year parameters. You gave the age parameters. You gave the charges.

[Commonwealth]: Parameters are between the ages of 12 and 14 involving indecent touching and digital penetration.

The Court: Okay. Then let that be your hypothetical. So the objection is sustained and the question will be rephrased in the way you just restated it.

[Appellant's Counsel]: Judge, note my objection to even the rephrased question.

The Court: Absolutely. It's noted. Thank you.

(End of side bar.)

The Court: Okay. So the objection was sustained. The question will just be rephrased.

- 18 -

Thank you.

*    *    *

[Commonwealth].      The alleged victim that we are discussing is between the ages of 12 and 14.  The acts that we will be concerned with involve indecent touching and digital penetration but not sexual intercourse.  Okay?

[Dr. Valliere]. Okay.

[Commonwealth]. All right.  And when I refer to sexual assault or sexual abuse, I am referring to indecent touching or digital penetration but not actual intercourse.

[Dr. Valliere]. Okay.

[The Commonwealth]. All right?  Is it common for children who are assaulted to immediately report the abuse?

N.T., 3/28/19, at 185-89.  Dr. Valliere then opined as to general reasons why a minor victim may not immediately report abuse without further objections from Appellant.  *See id.* at 189-99.

The trial court concluded that Appellant's claim did not warrant relief explaining:

Preliminarily, although the Commonwealth failed to abide by the [pre-trial] court's *in limine* ruling, there is no indication of any bad faith on the Commonwealth's part.  Thus, the [c]ourt does not find any basis for granting [Appellant's] motion on the basis of the *in limine* Order violation, alone.  With respect to the substantive issue raised, the [c]ourt is not persuaded that was any trial error warranting a new trial.  [Appellant's] challenge is based on the proposition that the hypothetical scenario posed by the Commonwealth, and the Commonwealth's subsequent (unspecified) questions, injected hypothetical facts so similar to the case on trial so as to go beyond the scope of testimony permitted by 42 Pa.C.S.[] § 5920, improperly bolstered the victim's credibility, and invaded the province of the jury as factfinder.

The [c]ourt does not agree that the Commonwealth exceeded the bounds of 42 Pa.C.S.[] § 5920. Pursuant to that statute, the Commonwealth is permitted to introduce expert testimony regarding the dynamics of sexual violence and victim responses and impacts. **See** [42 Pa.C.S.] § 5920(b)(2); **Commonwealth v. Cramer**, 195 A.3d 594; 608 (Pa. Super. 2018). Permissible testimony includes "opinions regarding specific types of victim responses and victim behaviors," but not opinions regarding the credibility of other witnesses, including the victim. **See** 42 Pa.C.S.[] § 5920(b)(2)-(3). The facts in the hypothetical scenario presented at the outset of Dr. Valliere's testimony -- the age range of the alleged victim and the type of assault alleged -- were sufficiently generic so as not to necessarily elicit an opinion relative to the specific [complainant] in the case on trial. The questions did no more than broadly focus the inquiry in a potentially expansive field to that which might have bearing on the issues to be decided by the jury.

Looking at the testimony overall, Dr. Valliere's opinions related to general topics, and were offered in response to general questions regarding reporting behavior in children and emotional and behavioral responses to sexual abuse. This testimony falls within the purview of permissible expert testimony under 42 Pa.C.S.[] § 5920.

Furthermore, Dr. Valliere was not given specific information about the alleged assaults at issue, nor did she offer opinions on any specific circumstances that could be perceived as bolstering the testimony of the [complainant] or any other witnesses in the case. In fact, on cross examination, Dr. Valliere clearly stated she was not testifying about whether or not to believe a witness, and acknowledged that this was the jury's role.

On review of the testimony, the Court finds no merit in [Appellant's] arguments on this issue.

Post-Sentence Op. & Order, 11/19/19, at 7-9.

Based on the forgoing, Appellant fails to establish an abuse of discretion in the trial court's decision that Appellant was not entitled to a new trial. As the trial court noted, the Commonwealth should have alerted the trial court to its attempt to orient Dr. Valliere with questioning to provide context for her

expert testimony. **See id.** at 7. Further, the trial court explained that the Commonwealth's references to age and the fact that no sexual intercourse occurred did not call for Dr. Valliere to opine on the credibility of any witness. **See id.** at 8. Moreover, we agree with the trial court that the questions were not so prejudicial as to warrant a new trial considering that Dr. Valliere's testimony regarding general victim reactions and the dynamics of sexual violence did not expressly opine on the credibility of the complainant. **See id.** at 9; **Cramer**, 195 A.3d at 608. Accordingly, Appellant's contention that the violation of the pre-trial ruling necessitated a new trial and that the Commonwealth's questioning improperly bolstered the complainant's credibility merits no relief.

**Testimony from School Teachers and Counselor**

In his fourth issue, Appellant contends that the prior trial court erred in its pre-trial ruling denying his motion *in limine* to preclude evidence from the complainant's school teachers and counselor concerning the complainant's demeanor and academic performance after the alleged assaults.[12] Appellant's Brief at 24. Appellant asserts that the prior trial court erred in balancing the

---

[12] Appellant notes that one of the complainant's teachers testified that the complainant disclosed the abuse to her and that the school counselor testified that the complainant told her that the abuse was sexual in nature. Appellant's Brief at 25. However, because this testimony did not fall within the scope of Appellant's motion *in limine* and because Appellant did not object at trial or develop a hearsay argument, this issue is waived. **See** Pa.R.A.P. 302(a), 2119(a); **see also Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) (reiterating that an appellant bears the burden of developing appellate arguments for our review and that this Court will not act as an appellant's counsel and develop arguments on his or her behalf).

relevance of the testimony that the complainant's mood and behavior appeared to change around the time of the abuse against its prejudicial effect to Appellant's trial defense. *Id.* at 25. Appellant contends that the testimony improperly bolstered the complainant's credibility. *Id.* at 24.

The Commonwealth argues that the testimony was relevant to "complete the story" of the complainant's failure to report the abuse after the initial assault. *Id.* at 13-14. Commonwealth's Brief at The Commonwealth further asserts that the evidence of the complainant's emotional distress was relevant because, like the presence of physical injury, it "makes the occurrence of a violent assault more probable." *Id.* at 14.

As noted above, we review the denial of a motion *in limine* for an abuse of discretion. *See Hoover*, 107 A.3d at 729. Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, the trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Instantly, the prior trial court rejected Appellant's argument that testimony from the complainant's school teachers and counselor was

irrelevant and unduly prejudicial, and explained that the complainant's behavior around the time of the alleged incidents was relevant. Pre-Trial Op. & Order, 11/15/18, at 6. The trial court further noted:

> [Appellant] filed a pretrial motion *in limine* seeking to preclude testimony from the [complainant's] teachers, mental health providers and school counselor regarding the [complainant]'s conduct at school on the basis of Pa.R.E. 401 and 403. [Appellant] also argued it would be too speculative to ascribe any change in the [complainant]'s demeanor to the alleged assault.
>
> [At the pre-trial hearing,] the Commonwealth argued that the proffered evidence of the [complainant]'s emotional response was relevant as indicia that a sexual assault had occurred as alleged. . . .
>
> At trial, the Commonwealth presented brief testimony from several of the [complainant's] teachers regarding their observations of the victim's demeanor in the time periods before and after the assault in November of 2017, noting that she had gone from outgoing and cheerful to being withdrawn and often appearing upset. Defense counsel had the full opportunity to cross-examine these witnesses regarding whether there was, in fact, a change, and to probe the possible reason(s) for any such change. . . .

Post-Sentence Op. & Order, 11/19/19, at 5.

Appellant's argument on appeal consists of a boilerplate restatement of his arguments in support of his motion *in limine* to preclude the above-stated testimony regarding the complainant's behavior as irrelevant, speculative, and unduly prejudicial. **See** Appellant's Brief at 24-25. Appellant neither cites nor discusses any case holding that the Commonwealth cannot present fact witnesses regarding the complainant's demeanor following abuse. **See id.** Accordingly, Appellant has failed to establish error in the prior trial court's

- 23 -

ruling concerning testimony from the complainant's teachers and counselor. *See Hoover*, 107 A.3d at 729. Therefore, no relief is due.

### *Alleyne*

In his fifth and final argument, Appellant claims that the trial court erred in imposing a mandatory minimum sentence pursuant to Section 9718.2. Appellant's Brief at 26. Appellant contends that Section 9178.2 is unconstitutional under *Alleyne*. *Id.* Specifically, Appellant contends that the trial court made an unconstitutional finding of fact that his previous Florida conviction was an "equivalent" offense under Section 9718.2. *Id.* at 26-27.

In response, the Commonwealth contends that Appellant waived this claim by not preserving it in his Rule 1925(b) statement. Commonwealth's Brief at 15. Concerning Appellant's substantive arguments, the Commonwealth asserts that the fact of a prior conviction does not require the type of factual findings prohibited in *Alleyne* and that the trial court here properly limited its ruling to conclude that Appellant's previous Florida conviction was equivalent to the elements of the Pennsylvania offenses. *Id.* at 16-18.

"The matter of whether the trial court possesses the authority to impose a particular sentence is a matter of legality [of the sentence]." *Commonwealth v. Dennis*, 164 A.3d 503, 510 (Pa. Super. 2017) (citation and quotation marks omitted). Further, it is well settled that

> [i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a

statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Leverette***, 911 A.2d 998, 1001-02 (Pa. Super. 2006)

(citations omitted). "[A] challenge to a sentence premised upon ***Alleyne*** . . .

implicates the legality of the sentence and cannot be waived on appeal."

***Commonwealth v. Newman***, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*).

Section 9718.2 states:

**(a) Mandatory sentence.—**

(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon such conviction, the court shall give the person oral and written notice of the penalties under paragraph (2) for a third conviction. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

\* \* \*

**(b) Mandatory maximum.—**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

**(c) Proof of sentencing.—**The provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The

applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

42 Pa.C.S. § 9718.2(1), (b), (c).

In ***Commonwealth v. Golson***, 189 A.3d 994 (Pa. Super. 2018), this

Court explained:

In ***Commonwealth v. Baker***, [78 A.3d 1044 (Pa. 2013)], the Pennsylvania Supreme Court held, as a matter of first impression, that the mandatory minimum sentence of 25 years for possession of child pornography as a second offender did not violate the prohibition against cruel and unusual punishment. . . . "No Pennsylvania case has applied ***Alleyne*** to sentences enhanced solely by prior convictions." "Prior convictions are the remaining exception to [***Apprendi v. New Jerse***y, 530 U.S. 466 (2000)] and ***Alleyne*** . . . insofar as a fact finder is not required to determine disputed convictions beyond a reasonable doubt to comport with the Sixth Amendment jury trial right."

***Golson***, 189 A.3d 1001-02 (some citations omitted).

Moreover, when determining whether offenses are "equivalent," our

Supreme Court instructs:

> [A] sentencing court must carefully review the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability. Accordingly, the court may want to discern whether the crime is *malum in se* or *malum prohibitum*, or whether the crime is inchoate or specific. If it is a specific crime, the court may look to the subject matter sought to be protected by the statute, *e.g.*, protection of the person or protection of the property. It will also be necessary to examine the definition of the conduct or activity proscribed. In doing so, the court should identify the requisite elements of the crime—the *actus reus* and *mens rea*—which form the basis of liability.

> > Having identified these elements of the foreign offense, the court should next turn its attention to the Pennsylvania Crimes Code for the purpose of determining the equivalent Pennsylvania offense. An equivalent offense is that which is substantially identical in nature and definition to the out-of-state or federal offense when compared [to] the Pennsylvania offense.

***Commonwealth v. Northrip***, 985 A.2d 734, 738 (Pa. 2009) (citation omitted).

Instantly, the Commonwealth presented evidence at the sentencing hearing that Appellant's 1984 Florida conviction for sexual battery was under F.S. § 794.011(4)(a). That offense made it a first-degree felony

> to commit sexual battery upon a person over eleven years of age, without that person's consent "when the victim is physically helpless to resist." Section 794.011(1)(d) defines "physically helpless" to mean "that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act."

***Perez v. State***, 479 So. 2d 266, 267 n.1 (Fla. Dist. Ct. App. 1985). Florida law defined sexual battery as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another

by any other object; however, sexual battery shall not include acts done for bona fide medical purposes." ***Duke v. State***, 444 So. 2d 492, 494 (Fla. Dist. Ct. App. 1984) (quoting F.S. § 794.011(1)(f)).

At the time of sentencing in the instant case, Section 9799.14 listed numerous offenses defined as prior convictions under Section 9718.2, including indecent assault, sexual assault, aggravated indecent assault, involuntary deviate sexual intercourse, and rape. ***See*** Pa.C.S. § 9799.14. Each of those offenses contain substantially similar elements to sexual battery under Section 794.011(4)(a) in Florida law. Here, the trial court properly reviewed only the elements of the offense when determining the offenses that were equivalent pursuant to ***Northrip***. ***See*** Post-Sentence Op. & Order, 11/19/19, at 4. Contrary to Appellant's contentions, the trial court was not required to determine whether any facts of his prior Florida conviction were equivalent to the Pennsylvania offenses listed in Section 9799.14. ***See Northrip***, 985 A.2d 738. Accordingly, we discern no merit to Appellant's ***Alleyne*** claim. ***See Golson***, 189 A.3d 1001-02.

**Conclusion**

For the foregoing reasons, we conclude that Appellant has failed to establish that the trial court erred in denying his motion for a new trial based on the alleged perjury of the complainant's sister, the ruling that his prior *crimen falsi* conviction was admissible, the hypothetical questions that the Commonwealth asked Dr. Valliere, nor the admission of testimony from the complainant's school teachers and counselor. Further, Appellant's legality-of-

sentence claim based on **Alleyne** merits no relief.  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/09/2021