J-S30034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA L. LEAP | : | |
| | : | |
| Appellant | : | No. 359 EDA 2022 |

Appeal from the PCRA Order Entered December 29, 2021
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0002494-2015

BEFORE:  STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED SEPTEMBER 08, 2022**

Joshua L. Leap (Leap) appeals from the order of the Court of Common Pleas of Monroe County (PCRA Court) denying his first petition for relief under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  On appeal, Leap argues that the PCRA court erred in rejecting his claim of trial counsel ineffectiveness for failing to address at trial the chain of custody for the Commonwealth's DNA evidence because it was misplaced after testing.  After review, we affirm.

The PCRA court gave a thorough summary of the facts of Leap's trial that are germane to this matter:

> … [I]n July of 2015 the child victim attended an overnight family reunion with her 15-year-old boyfriend.  [Leap], the boyfriend's cousin who also attended the reunion, was 28 years old at the time.  At the reunion, the victim and her boyfriend consumed

---

[*] Retired Senior Judge assigned to the Superior Court.

alcohol and smoked marijuana that was provided by adults in attendance, and then went to sleep in a tent around midnight.

In the early morning hours, the victim awoke to find [Leap] on top of her. [Leap] pulled the victim's pants down, pinned her to the ground, put his hand over her mouth so that she could not speak or call out, and raped her. The victim disclosed the rape to another cousin, who, in turn, told the victim's boyfriend. Later that day, [Leap] told the victim and her boyfriend that he would give them marijuana, or whatever they wanted, if they did not say anything to get him in trouble.

Upon returning home, the victim told her mother about the rape. The victim's mother called police and took her daughter to the hospital, where a sexual assault examination was performed by a Sexual Assault Nurse Examiner ("SANE"). Evidence collected during the examination was turned over to the state police. Later, the state police obtained a warrant and collected DNA samples from [Leap].

The evidence collected from the victim and [Leap] was tested at state police crime labs. DNA testing revealed that [Leap's] semen was on the victim's clothes and inside her vagina. Reports of the DNA testing were prepared. The reports were given to the Commonwealth and the evidence that had been tested was returned to the police.

Subsequently, the testing reports were provided to [Leap's] first attorney, David Skutnik, Esq., in discovery. Attorney Skutnik retained an expert to perform an independent DNA analysis and asked the Commonwealth to make the evidence obtained from the victim and [Leap] available for that purpose. After Attorney Skutnik successfully moved to compel, the evidence was provided. In fact, the evidence was provided on two different occasions. However, each time semen-stained vaginal and cervical swabs taken from the victim, along with samples taken from her underpants, were missing.

Attorney Skutnik communicated with the assistant district attorney about the missing evidence on several occasions. Along the way, Attorney Skutnik was provided with chain of custody documents which demonstrated that the chain pertaining to the DNA evidence was intact through testing at the state police labs and return of the evidence to the state police barracks. Shortly

before a scheduled pretrial conference, the Commonwealth provided a letter from the state police indicating that the missing swabs had been found in an evidence destruction bin. The swabs remained sealed in the manner in which they were returned from the lab.

Attorney Skutnik learned on March 20, 2017 that the missing swabs had been found. At that time, jury selection had been scheduled for April 4, 2017. Trial was later continued to the May term.

On April 6, 2017, Attorney Skutnik filed a "Motion to Preclude the Commonwealth from Introducing DNA Evidence at the Time of Trial" (the "Motion to Preclude"). At that time, jury selection was scheduled for May 2, 2017. The motion outlined and included copies of communications pertaining to the defense attempts to obtain and independently test the DNA evidence, the recent discovery by the state police of the misplaced swabs, and related matters. The previously-supplied chain of custody documents were also attached. Preclusion was sought based on alleged **_Brady_** violations. In addition, due to commitments to provide expert testimony in other matters, the defense expert did not have time to test the swabs before the scheduled trial.

On April 19, 2017, the Motion to Preclude was denied. In the denial order, trial was continued to the June 2017 term.

As a result of this and subsequent continuances, the defense expert had the full ability to independently test the evidence that had been collected from the victim and [Leap]. The expert rendered a report that was provided to defense counsel.

Around that time, Brandon Reish, Esq., entered his appearance on behalf of [Leap] in substitution of Attorney Skutnik. Attorney Reish represented [Leap] from that date through trial and all direct appeal proceedings.

Attorneys Skutnik and Reish both had the opportunity to review the expert's report. The findings were not favorable to [Leap] and did not undermine or reach a different conclusion than the Commonwealth's DNA testing. As a result, the expert was not called at trial.

- 3 -

The evidentiary portion of trial commenced on January 9, 2018. Before the jury entered the courtroom, Attorney Reish offered to stipulate to the chain of custody regarding the DNA evidence. (N.T., 1/9/2018, p. 5).

During trial the child victim testified as summarized above. Her testimony was consistent with her pretrial statements to the police and medical personnel.

[Leap] also testified, against the advice of counsel. Among other things, he placed himself at the scene of the rape and did not support the defense theory of the case.

Although Attorney Reish had offered to stipulate to the chain of custody, the Commonwealth laid a solid foundation for admission of the DNA evidence from its collection to its testing at two different state police crime lab facilities. The foundation was laid and the chain of custody linked through the victim (N.T., 1/9/2018, pp. 47-51, Commonwealth Exhibit 1); the SANE nurse who conducted the sexual assault examination of and collected samples from the victim (N.T., 1/10/2018, pp. 48-55, Commonwealth Exhibit 6); the state trooper who took custody of the evidence obtained by the SANE Nurse and collected [Leap]'s DNA (N.T., 1/9/2018, pp. 17-21); the state police serologist who analyzed the evidence (N.T., 1/10/2018, pp. 90-118, Commonwealth Exhibit 8); and the forensic scientist who conducted the DNA testing (*Id*. at 114-134, Commonwealth Exhibit 10).

PCRA Court Opinion (PCO), 2/8/22, at 2-5.

At the end of trial, the jury found Leap guilty of rape, statutory sexual assault, sexual assault, aggravated indecent assault and indecent assault.[1] On April 10, 2018, the trial court sentenced him to an aggregate term of 7½ to 20¼ years' imprisonment. This Court affirmed his judgment sentence on

---

[1] 18 Pa.C.S. §§ 3121(a)(1), 3122.1(b), 3124.1, 3125(a)(2) and 3126(a)(2).

direct appeal and our Supreme Court denied his petition for allowance of appeal. *See Commonwealth v. Leap*, 222 A.3d 386 (Pa. Super. October 25, 2019), *appeal denied*, 233 A.3d 677 (Pa. May 13, 2020).

On November 9, 2020, Leap filed a timely *pro se* PCRA petition. Counsel was appointed and filed an amended petition alleging that trial counsel was ineffective for failing to address at trial to the chain of custody of the DNA samples that were initially lost but later found. *See* Amended Petition, 3/16/21, ¶ 10. However, for trial counsel's ineffectiveness, Leap asserted that he "could have had a stronger argument at trial based on the weight of the evidence, and in turn, a stronger argument on appeal." *Id*.

At the evidentiary hearing, Attorney Skutnik testified about hiring a DNA expert and planning to call him as an expert until he received his report and determined that it would not be beneficial. *See* N.T., 4/16/21, at 19.

Attorney Reish echoed this sentiment in explaining why he stipulated to the chain of custody for the DNA evidence. He explained that he pursued a mistake-of-age defense because their DNA expert's findings would not help the defense.

> The defense we were going with was based on what [the DNA expert] had told me about what he would testify to, and [the DNA expert] was not able to provide us with anything that would benefit us to challenge the Commonwealth's DNA in that case, which is unfortunate, because originally it appeared that that's what his preliminary assessment was, that he may be able to do that, and then when his final opinion came he was unable to do that. So he would not have provided exculpatory testimony, so I would not call him.

*Id*. at 28-29.

The PCRA court later followed up on this and asked Attorney Reish about the decision not to challenge the DNA evidence.

> THE COURT: But I guess what I'm saying with the DNA is it was never contested, is my recollection correct?
>
> MR. REISH: When, no, the DNA evidence, so this would have been a mixture case, originally there were thoughts that it could be challenged based on whatever science [the DNA expert] was looking into, because he had done that in some other cases, Attorney Skutnik had hired him, and then when the results came back and he actually, like when the rubber hit the road, he was not in a position to testify the way he had suggested to Attorney Skutnik that he could testify. The science just wasn't there and he couldn't muddy the waters, he really couldn't do anything, which was very, I know that was disappointing to the defense theory at that time.
>
> THE COURT: Okay.
>
> MR. REISH: Because that was, originally that was what the thought was, that's why all those resources went into the DNA and [the expert], but it didn't pan out, so we couldn't, we had no basis to challenge the DNA, that was Mr. Leap's DNA.

*Id*. at 31-32.

After the hearing, the PCRA court issued an order denying Leap's petition, following which he filed a notice of appeal.[2] On appeal, Leap asserts

---

[2] After Leap timely filed his notice of appeal, the PCRA court issued an amended final order giving him 89 days' time credit but otherwise affirming its prior order. As a result, we will treat this appeal as timely filed after the PCRA court's final amended order. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

that the PCRA court erred in not finding trial counsel ineffective for failing to challenge the DNA evidence at trial.[3]

As this Court has explained:

[T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (cleaned up).

A claim has arguable merit when "the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. King*, 259 A.3d 511, 520 (Pa. Super. 2021) (cleaned up). As for the second prong, counsel lacked a reasonable basis for their decision if "no competent counsel would have

---

[3] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa. Super. 2019) (quoting *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017)). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa. Super. 2019) (citation omitted). "We defer to the PCRA court's factual findings and credibility determinations supported by the record." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 789 (Pa. Super. 2015) (citation omitted).

chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." *Id.* (cleaned up). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 521 (cleaned up). Finally, "a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Id.* (cleaned up).

As noted, Leap's claim centers on the chain of custody for the DNA evidence.

> "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Critically, "[p]hysical evidence may be properly admitted despite gaps in testimony regarding custody." Furthermore, any issue regarding gaps in the chain of custody relate to the weight of the evidence, not its admissibility.

*Commonwealth v. Witmayer*, 144 A.3d 939, 950 (Pa. Super. 2016) (citations omitted).

First, the PCRA court found that Leap's claim lacked arguable merit because the Commonwealth established an unbroken chain of custody from the collection of the DNA evidence to its testing.

> … [T]he record demonstrates that the chain of the DNA evidence — from its collection to its testing at two state police labs — was strong, unbroken, and not subject to attack. The intact chain is demonstrated by the reports, documents, and information provided to [Leap's] attorneys, in discovery and pretrial proceedings and the trial testimony of the Commonwealth's

witnesses[.] The testing conducted, the reports prepared, and the opinions rendered by the Commonwealth's experts were based on evidence provided to them through the unbroken chain. Accordingly, there was no reasonable basis on which Attorney Reish could have challenged the foundation of the DNA evidence or argued that the jury should give little weight, or even less weight, to the results of the testing for foundational reasons. The fact that some of the DNA evidence was for a time misplaced after it was tested and then returned to the troopers who collected it is irrelevant.

PCO at 9. We agree with this analysis. As detailed above, Attorney Skutnik moved to preclude the DNA evidence when he discovered that it had been misplaced after the testing. Although that motion was denied, the PCRA court nonetheless continued the trial to allow Leap's expert to analyze the DNA evidence. As the evidentiary hearing showed, however, that expert's analysis failed to impugn the Commonwealth's evidence showing that it was, in fact, Leap's DNA found. As the PCRA court highlighted, the Commonwealth laid an unbroken chain-of-custody going from (1) the victim, (2) to the SANE nurse, (3) to the state police, (4) to the state police serologist, and finally (5) to the forensic scientist. Any weight argument that Leap could have made to the jury would have been confined to the chain of the custody of the DNA evidence *after* it had already been tested. Thus, any argument that could have been raised at trial about the DNA evidence's chain of custody would have had little arguable merit.

Even if we were to accept that Leap's claim gets past the first prong, Attorney Reish's testimony at the evidentiary hearing established that he had a reasonable basis stipulating to the chain of custody for the DNA evidence.

As cited above, Attorney Reish explained that the defense theory of the case changed after determining that they would not be able to assail the Commonwealth's DNA evidence, especially after receiving the report of their own DNA expert and determinizing that he would not be able to provide any beneficial testimony. *See* N.T., 4/16/21, at 28. With no basis for challenging the DNA, Attorney Reish made the reasonable decision to stipulate to the chain of custody and shift to a mistake-of-age defense that would explain why Leap's DNA would have been recovered yet still give the jury a reason to acquit. Thus, Attorney Reish had a reasonable strategic basis for deciding to not contest the chain of custody and not present an inconsistent mistake-of-age defense in which he conceded Leap had contact with the victim but also attacked the Commonwealth's DNA evidence. Such reasonable decisions are well within the purview of trial counsel in deciding the best course of defending a case and will not be second-guessed by this Court. Accordingly, Leap has failed to show that trial counsel's decision to stipulate to the chain of custody for the DNA evidence lacked a reasonable strategic basis.

Finally, even though unnecessary based on our prior findings, we observe that Leap failed to plead and prove that he was prejudiced by Attorney Reish failing to address the DNA evidence's chain of custody at trial. First, as noted, Leap failed in his amended petition to even allege that the outcome of trial would have been different but for trial counsel's alleged error, as he merely alleged that he "could have had a stronger argument at trial based on

the weight of the evidence[.]" This is not the standard, however. "Prejudice, in [the context of an ineffectiveness claim], has been repeatedly stated as requiring proof that but for counsel's action or inaction, there was a reasonable probability that the proceeding would have had a different outcome." ***Commonwealth v. Diaz***, 226 A.3d 995, 1007 (Pa. 2020).

In any event, even when the correct standard is applied, Leap's claim falls well short of the mark. As the PCRA court astutely explained,

> the post-testing misplacement of evidence neither prejudice Petitioner nor provided trial counsel with a factual basis that would have supported a weight-of-the-evidence argument. In this regard, the DNA evidence was ultimately found, intact and as sealed by the testing labs, and turned over to [Leap's] expert for testing. Trial continuances afforded [Leap's] expert ample unfettered opportunity to independently test the evidence. There. is no assertion that the evidence was altered, contaminated, degraded, or compromised in any way by its temporary misplacement or the passage of time. Similarly, there is no assertion that the temporary misplacement called into question the Commonwealth's testing adversely impacted the ability of the defense expert to evaluate the results of the Commonwealth's testing, or interfered with the expert's ability to perform his own testing. Simply, [Leap's] defense was not hampered in any way. Under these facts and circumstances, the temporary post-testing misplacement of the swabs did not prejudice Petitioner and there was no meritorious chain or weight of evidence argument that Attorney Reish could reasonably or legitimately have advanced.

PCO at 9-10. We have little to add to this analysis other than to note that Leap's argument fails to account for any of the Commonwealth's other evidence establishing his guilt as outlined in the summary above, not to mention Leap's decision to testify in his own defense—against the advice of counsel—and give an account that conflicted the initial theory of defense

advanced by Attorney Reish. For these reasons, we agree with the PCRA court that Leap has also failed to establish that he was prejudiced by trial counsel's decision not to address the chain of custody for the DNA evidence at trial.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: 9/8/2022