J-S41022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYLER RAYMOND BROOKS | : | |
| | : | |
| Appellant | : | No. 477 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 6, 2023
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000716-2022

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: December 21, 2023**

Appellant, Tyler Raymond Brooks, appeals from the judgment of sentence entered on April 6, 2023. We affirm.

The trial court ably summarized the underlying facts of this case:

On September 4, 2021, John Voyten, who works as a volunteer with the Farmington Volunteer Fire Department, testified that he was eating lunch at Braddock's Restaurant when he received a call to respond to the roadway outside Braddock's for an unresponsive male. When he left the restaurant, he observed a vehicle against the guardrail. In the vehicle, he observed an unresponsive male in the driver's seat draped over the steering wheel with the vehicle transmission in drive. Voyten testified that the vehicle was taken out of drive. Voyten stated that as [Appellant] was unresponsive to his attempts to arose him, he "knew he was in some type of overdose." Voyten administered a sternum rub to [Appellant] which revived him. EMS then arrived and provided care to [Appellant].

_____

[*] Former Justice specially assigned to the Superior Court.

Mark Dunham, an emergency medical technician [("EMT")] with the Fayette County Emergency Medical Services, arrived on the scene and observed a first responder administering a sternum rub. Dunham testified that [Appellant] became conscious but was initially "pretty incoherent." [Appellant] refused to get out of the vehicle and stated that "he was on house arrest and he needed to get out of the area." [Appellant] then placed the vehicle in drive and attempted to drive away. At that point the EMTs attempted to prevent him from driving by placing the car's transmission back in park. Dunham took hold of [Appellant's] other hand. [Appellant] then grabbed Dunham's thumb, bent it back, and broke it in two places. The other responders blocked [Appellant's] vehicle from leaving with their vehicles. [Appellant] backed into one of the vehicles.

Dunham testified that he had a hard cast on his hand for six to eight weeks and had exercises to do once the cast was off to get the dexterity back in his hand. Dunham was able to continue to work as a teacher but was off work as an EMT for eight weeks. Dunham testified that the dexterity in his hand is still a little off.

Pennsylvania State Trooper [Joshua] Spyra [("Trooper Spyra")] testified that he observed that [Appellant] had to lean on items as he walked and that his pupils were very constricted. [Trooper Spyra] did not have [Appellant] perform any field sobriety tests as [Appellant] was unsteady on his feet and [Trooper Spyra] didn't know if he was injured. [Trooper Spyra] ultimately placed [Appellant] under arrest. When [Trooper Spyra] requested that [Appellant] submit to chemical testing, he refused to be tested.

[Trooper Spyra] transported [Appellant] to the State Police Barracks. A video of [Appellant's] actions in the back seat of the vehicle was played for the jurors. The video showed [Appellant] place a piece of paper between the seat cushions. After transporting an individual, [Trooper Spyra] testified that he routinely checks the back seat of his patrol vehicle. He located a white powdery substance inside a folded paper between the backseat cushions. The Greensburg Lab report identified the powder with a net weight of .16 grams containing Fentanyl . . . and Ketamine. . . .

[Appellant's] counsel raised two objections during trial. His first objection was to the comment from [witness Mark Dunham,] that [Appellant] was on house arrest, alluding to a prior criminal record. At sidebar, [Appellant's] counsel requested a mistrial. The [trial court] . . . denied the request as [it] did not believe that the statement seriously prejudiced [Appellant] and thought a curative instruction would have cured the fault. However, [Appellant's] counsel chose not to have a curative instruction.

[Appellant's] counsel's next objection was to the statement by the witness, Voyten, that he believed [Appellant] had overdosed. Counsel objected to the lack of a foundation, and that the witness was not a medical expert. The [trial court] responded that the [Commonwealth] had laid a foundation after the statement had been made.

Trial Court Opinion, 5/22/23, at 1-3 (citations omitted).

Following a jury trial, Appellant was convicted of aggravated assault, simple assault, harassment, possession of a controlled substance, and driving under the influence ("DUI").[1] On April 6, 2023, the trial court sentenced Appellant to serve an aggregate term of two to ten years in prison for his convictions. Appellant filed a timely notice of appeal. He raises two claims to this Court:

[1.] Did the trial court abuse its discretion by failing to grant defense counsel's motion for a mistrial based upon testimony elicited by the Commonwealth concerning the prior criminal history of [Appellant]?

[2.] Did the trial court err in failing to grant defense counsel's objection to testimony that [Appellant] overdosed at the time of the incident without any foundation or expert testimony to support this conclusion?

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 2701(a)(1), and 2709(a)(1), 35 P.S. § 780-113(a)(16), and 75 Pa.C.S.A. § 3802(d)(2), respectively.

Appellant's Brief at 7.

Both of Appellant's claims implicate the trial court's evidentiary rulings. We have explained:

> Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record.

*Commonwealth v. Melvin*, 103 A.3d 1, 35 (Pa. Super. 2014) (citations omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (quotation marks and citations omitted).

First, Appellant claims that the trial court abused its discretion when it denied his request for a mistrial, after a Commonwealth witness implied that Appellant had a prior criminal record.

Mark Dunham, an EMT with the Fayette County Emergency Medical Services, testified that, on the afternoon of September 4, 2021, he "was working out of Fayette EMS" when he received a 911 call to aid an unresponsive male in the area of Braddock's Inn. N.T. Trial, 4/4/23, at 16-17. He testified that, when he arrived on scene, he encountered Appellant, awake, in the driver's seat of a vehicle. *Id.* at 17-18. The Commonwealth questioned

Mr. Dunham on what Mr. Dunham initially observed and how Mr. Dunham began to approach Appellant. *See id.* at 17-21. Mr. Dunham then testified as follows:

> [The Commonwealth]: So as you spoke with [Appellant] and you testified that he was then able to start answering questions, is that correct?
>
> [Mr. Dunham]: Yes.
>
> [The Commonwealth]: What do you do next?
>
> [Mr. Dunham]: Um, then we basically tried to get him out of the car um, by just saying, hey why don't you come over to the ambulance, let us check you out if everything's okay, sign a refusal, we'll be out of your way. Still, like I said, at that point, he was starting to become more coherent but still was not completely, you know, what I would call, with it, as far as answering all questions appropriately, that kind of thing. Our goal normally is to get them the ambulance where we can work in a more private setting, as far as, getting basic vitals and that kind of stuff. Um, he stated no, he wasn't gonna do that. He stated that he was on house arrest and he needed to get out of the area.

*Id.* at 21.

Appellant immediately objected to the testimony regarding him being on house arrest and Appellant requested a mistrial. *See id.* at 21 and 47. The trial court denied the request for a mistrial, but offered to provide a curative instruction to the jury; Appellant, however, asked that the trial court not provide the curative instruction. *Id.* at 47.

On appeal, Appellant now claims that the trial court erred when it denied his request for a mistrial. This claim fails.

- 5 -

We apply the following principles in reviewing an order that denies an application for a mistrial.

> A mistrial is an extreme remedy that is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing [the evidence] and rendering a true verdict." *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). "It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial." *Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*) (citations omitted). When a trial court gives adequate cautionary instructions to the jury, it is not necessary for the court to declare a mistrial. *Bryant*, 67 A.3d at 728. "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001).

*Commonwealth v. Leap*, 222 A.3d 386, 392 (Pa. Super. 2019). "When dealing with a motion for mistrial due to a reference to past criminal behavior, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa. Super. 2007) (quotation omitted).

Applying these standards, several factors support the trial court's decision to reject Appellant's request for a mistrial. First, the testimony of Messrs. Dunham and Voyten and Trooper Spyra established overwhelming evidence supporting Appellant's convictions for aggravated assault, simple assault, harassment, possession of a controlled substance, and DUI. Second, Mr. Dunham made only a passing reference to Appellant's house arrest when

describing why Appellant would not leave his car to enter the ambulance. Mr. Dunham uttered the comment on his own when the prosecutor asked the open-ended question "What do you do next?". The Commonwealth did not solicit information about Appellant's prior criminal history. Finally, the trial court offered to provide a curative instruction to the jury, but Appellant chose not to have the curative instruction read.

Under the circumstances before us, we cannot conclude that the unavoidable effect of Mr. Dunham's statement was to deprive Appellant of a fair trial by preventing the jury from weighing the evidence and rendering a true verdict. *See Bryant*, 67 A.3d at 728. Appellant's first claim on appeal thus fails.

Next, Appellant claims that the trial court abused its discretion when it overruled his objection to John Voyten's testimony that Appellant "was in some type of overdose." Appellant's Brief at 13.

During trial, volunteer firefighter John Voyten testified that, on the afternoon of September 4, 2021, he was eating lunch in Braddock's Inn Restaurant when he "received a call on [his] phone, through the 911 service, that [there was] an unresponsive male on the side of the road . . . in front of Braddock's Restaurant." N.T. Trial, 4/4/23, at 35. Mr. Voyten testified that he exited the restaurant and saw Appellant unconscious, in the driver's seat of a vehicle. *Id.* at 36. He testified that he then began to perform a sternum rub on Appellant. Asked why he performed the sternum rub on Appellant, Mr. Voyten testified:

> Well, I knew he was unresponsive, he was in some type of overdose. He was not, you know, in a normal state as far as. . .

*Id.* at 37.

Appellant objected to Mr. Voyten's testimony regarding him being "in some type of overdose." *Id.* at 38. The trial court overruled the objection. Although Appellant now claims that the trial court erred when it overruled his objection to Mr. Voyten's testimony, we conclude that the trial court's ruling was within its discretion. Indeed, as the trial court ably explained:

> Witness Voyten testified that he has worked as a volunteer firefighter for [20] years. While being questioned by the prosecutor, in response to a question about why he began administering the sternum rub, the witness responded that "I knew he was unresponsive, he was in some type of overdose. He was not, you know, in a normal state." [Appellant's counsel] objected and the [trial court] overruled the objection, but stated he would discuss it further during the recess.
>
> When questioned by the prosecutor if he had seen other persons in similar situations, Voyten testified that he had seen people in that condition previously, and so he began the sternum rub to begin treatment to bring him back to consciousness. Voyten explained the purpose of the sternum rub. He testified that a sternum rub brings the blood flow back into the heart. Voyten went on to explain that if you do not have Narcan, if you rub hard enough on the sternum at the heart area, it brings blood back in. The sternum rub will save your life, it will bring you back.
>
> It is well settled in Pennsylvania law that an individual can give an opinion about intoxication or drunkenness. ***Commonwealth v. Ragan***, 652 A.2d 925 (Pa. Super. 1995). Intoxication is evidence that would be familiar to a volunteer firefighter who assists at accident scenes with all kinds of

- 8 -

wrecks and in fact, intoxication is one opinion that any person can give. The [trial court] determined that the witness used the information to explain his actions to the jury, his statements about his observations of [Appellant's] condition were made to explain his subsequent treatment of [Appellant]. As a long time first responder and firefighter, he had the technical knowledge to make the statement under the circumstances.

Trial Court Opinion, 5/22/23, at 6-7 (citations omitted).

We agree with the trial court's able explanation and thus conclude that Appellant's second claim on appeal fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

12/21/2023