J-S02030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SYSCO SCHRUBY | : | |
| | : | |
| Appellant | : | No. 741 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 27, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003966-2021

BEFORE:   LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 12, 2024**

Sysco Schruby (Appellant) appeals *nunc pro tunc* from the judgment of

sentence entered following his conviction by a jury of two counts each of

aggravated assault – attempt to cause serious bodily injury and aggravated

assault with a deadly weapon; and six counts of recklessly endangering

another person (REAP); and his conviction by the trial court of possession of

firearms prohibited.[1]  After careful review, we affirm.

The trial court summarized the relevant history underlying this appeal:

On November 22, 2019[,] at approximately 7:30 P.M., a green
GMC Envoy pulled into the parking lot of Freddie's Beer Store
("Freddie's") located at [the Rodeway Inn,] 1100 Green Lane,
Bristol, Bucks County, Pennsylvania, with Shakeria Parker

---

* Former Justice specially assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S.A. §§ 2702(a)(1) & (2), 2705, 6105(a)(1).

("Parker"), Mark Alexander ("Alexander"), William Flemming ("Flemming"), Tashae McClean ("McClean"), and four-year-old M.F. inside.  N.T. 05/10/2022, p. 33.  Parker, McClean, and Alexander went into Freddie's while Flemming waited in the car with his [and Parker's] daughter, M.F.  **Id.** at 34.  Shortly thereafter, a silver Honda pulled into the parking lot and Appellant, wearing a gray sweatshirt, got out of the back passenger's seat and went inside the store.  **Id.** at 35.  Appellant and Alexander had a verbal altercation inside Freddie's, which was captured on video surveillance.  **Id.**  Parker went outside to inform Flemming of the argument, and in response Flemming walked over and intervened.  **Id.**  As Appellant was arguing with Alexander and Flemming, a man named Ernest Gundy ("Gundy") tried to de[-]escalate the situation and encouraged everyone to walk away.  **See** Exhibit C-4.

Appellant and his group of friends returned to the silver Honda, and Parker, Alexander, Flemming and McClean returned to the area of [Parker's] Envoy.  **Id.** at 36.  Parker, Alexander, McClean, Flemming, Gundy, and M.F. were standing around the Envoy when the silver Honda, with Appellant inside, drove past them on its way out of Freddie's parking lot.  **Id.**  Video surveillance captured Appellant reaching his arm out of the silver Honda's back passenger window and firing shots at the Envoy.  **Id.** at 37….

Trial Court Opinion, 5/18/23, at 1-2 (paragraph break added).

Police subsequently arrested Appellant and charged him with the above-described crimes, and additionally charged him with two counts of attempted homicide.[2]  The matter proceeded to a jury trial on May 10-11, 2022.  Following the Commonwealth's evidence, the trial court dismissed two counts of attempted homicide for lack of evidence.  Appellant thereafter presented

---

[2] 18 Pa.C.S.A. §§ 901, 2502.

his defense of the charges. The jury ultimately convicted Appellant of the aggravated assault and REAP charges.

Following a stipulated waiver trial on June 27, 2022, the trial court convicted Appellant of possession of firearms prohibited. That same day, the trial court sentenced Appellant to an aggregate prison term of 10 – 20 years. Appellant filed post-sentence motions, which the trial court denied on November 9, 2022. On December 19, 2022, Appellant filed a motion to reinstate his direct appeal rights, *nunc pro tunc*. The trial court granted Appellant's motion on March 2, 2023. This appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the evidence was sufficient to convict [Appellant] of aggravated assault [-] attempt to cause serious bodily injury and aggravated assault [with a deadly weapon,] where no gun shots were in proximity to either victim?

2. Whether the trial court erred by denying [Appellant's] demur to aggravated assault [-] attempt to cause serious bodily injury; where the court granted [a] demur for attempted homicide for lacking a specific intent to kill?

3. Whether the evidence was sufficient to convict [Appellant] of multiple counts of reckless[ly] endangering another person[,] where one bullet was the basis of multiple victims and convictions?

4. Whether the trial court erred by permitting the district attorney to cross[-]examine [Appellant] that witnesses did not want to testify "because they're afraid of you", over objection?

5. Whether [Appellant] properly waived his right to request a mistrial, and whether the colloquy was sufficient [for] that waiver; when defense counsel failed to object to the testimony

- 3 -

of Isaiah Wheeler that [Appellant] was incarcerated, and when [] Gundy invoked his 5th [A]mendment privilege in front of the jury?

Appellant's Brief at 9 (issues renumbered).

In his first issue, Appellant challenges the sufficiency of the evidence underlying his aggravated assault convictions, "where no gun shots were in proximity to either victim[.]" Appellant's Brief at 19. Appellant argues that "no one was injured[;] no one was hit by any bullet; and the trial court correctly found that Appellant had no specific intent to kill based on the evidence." *Id.* at 20. Appellant distinguishes the circumstances in this case with those found to establish aggravated assault in ***Commonwealth v. McClendon***, 786 A.2d 1004 (Pa Super. 2001). In ***McClendon***, Appellant argues, the defendant engaged in a "gang style gun fight with an approaching gang when the victim was shot, and nearly died from his injuries." Appellant's Brief at 21. By contrast, Appellant asserts, no one was injured in this case and, therefore, "[m]alice under a reckless indifference to human life standard is not applicable." *Id.* Appellant further claims there is no evidence that he aimed at "anything in particular." *Id.* at 22. According to Appellant, he "recklessly fired from the back of the Honda intending to scare those that he had just had a confrontation with." *Id.*

Similarly, with respect to the charge of aggravated assault with a deadly weapon, 18 Pa.C.S.A. § 2702(a)(4), Appellant argues that there is no evidence he wanted to kill anyone. Appellant's Brief at 24. Appellant contrasts this

case with the circumstances in **Commonwealth v. Lopez**, 654 A.2d 1150 (Pa. Super. 1993). In **Lopez**, Appellant argues, there was independent evidence that the defendant wanted to kill the victim. Appellant's Brief at 24. Appellant asserts that, without independent evidence of his intent to cause bodily injury, his conviction cannot stand. **Id.** at 24.

> Challenges to the sufficiency of the evidence

> are governed by our familiar and well-established standard of review. We consider the evidence presented at trial *de novo*. We are obliged to evaluate that evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt. This is a question of law. Our scope of review is plenary.

**Commonwealth v. Chambers**, 188 A.3d 400, 409 (Pa. 2018) (citations omitted). "[T]he trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

A person is guilty of aggravated assault under Section 2702(a)(1) if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission

of that crime."  18 Pa.C.S.A. § 901(a).  "An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury."  ***Commonwealth v. Matthew***, 909 A.2d 1254, 1257 (Pa. 2006).

A defendant is guilty of aggravated assault under Section 2702(a)(4) if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon."  ***Id.*** § 2702(a)(4).

Crimes Code Section 2301 defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.  The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.  ***Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003). Significantly, "[a] person acts intentionally with respect to a material aspect of an offense when … it is his conscious object to engage in conduct of that nature or to cause such a result."  18 Pa.C.S.A. § 302(b)(1)(i).

> Because direct evidence of intent is often unavailable, intent to cause serious bodily injury may be shown by the circumstances surrounding the attack.  In determining whether intent was proven from such circumstances, the fact finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom.

***Bruce***, 916 A.2d at 661 (citations and quotation marks omitted).

We note that Appellant did not challenge his conviction of possession of firearms prohibited.  The Crimes Code provides,

[i]n the trial of a person for committing or attempting to commit a crime enumerated in section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense.

18 Pa.C.S.A. § 6106. Section 6105 lists aggravated assault (18 Pa.C.S.A. § 2702) as an enumerated offense. 18 Pa.C.S.A. § 6105(b). As our Supreme Court explained, "[a] gun is a lethal weapon; pointing it toward a person, and then discharging it, speaks volumes as to one's intention." *Hall*, 830 A.2d at 543.

At trial, the Commonwealth presented the testimony of Bristol Township Police Sergeant Dennis Leighton. N.T., 5/10/22, at 61. Sergeant Leighton testified regarding his investigation of the shooting incident. *Id.* at 64. In the course of his investigation, Sergeant Leighton obtained surveillance video from the Rodeway Inn and its take-out beer store. *Id.* at 69. The Commonwealth played the surveillance video for the jury. *Id.* at 74. From the video, Sergeant Leighton identified Appellant as the man exiting the rear passenger side of a silver vehicle, and entering the beer store. *Id.* at 81. Sergeant Leighton further identified Appellant exiting the beer store and entering the rear passenger side of the silver vehicle. *Id.* at 83.

Parker testified that during the evening of May 22, 2019, she went to the take-out beer store at the Rodeway Inn. *Id.* at 152. At the time, Parker was accompanied by M.F., "a cousin, a friend, and my kid's father." *Id.* at 153. According to Parker, she and Alexander entered the beer store. *Id.* at

154. When shown the surveillance video, Parker identified Appellant also entering the store. *Id.* at 155. While inside of the store, Parker heard someone in Appellant's group say to Alexander, "We run the county. We run Bristol. And they said some other stuff, but I don't remember the rest of the stuff they were saying." *Id.* at 167.

Parker testified that M.F. remained inside of her GMC Envoy. *Id.* at 158. Parker stated that after exiting the store, she stood on one side of the Envoy, talking to Gundy, who was inside of his own vehicle, which was stopped about a car length behind the Envoy. *Id.* at 164-65. Parker explained that Flemming, McLean, and Alexander were also in and around the Envoy. *Id.* at 158. While viewing the video, Parker identified Appellant as firing two shots from the silver vehicle towards the beer-store parking lot. *Id.* at 160-61. According to Parker, one shot "**just missed the top of my truck**." *Id.* at 161 (emphasis added).

McLean testified that during the evening of November 22, 2019, she accompanied Parker, M.F., Flemming and Alexander to the beer store at the Rodeway Inn. *Id.* at 173-74. According to McLean, while inside of the beer store, Appellant and Troy were "just screaming like they run the county, because Mark [Alexander] is from the city and I guess they don't like out-of-towners out there[.]" *Id.* at 176. McLean stated that Parker and Alexander first left the beer store, "and a little bit later everybody else came out." *Id.*

McLean testified that she, Alexander, and Parker stood outside of the Envoy. *Id.* at 177. McLean indicated that M.F. and Flemming were inside of the Envoy. *Id.* According to McClean, Alexander asked Appellant what was going on, "because [Parker] had woke him up saying that they was arguing …." [Appellant] … and them was arguing with [Alexander]." *Id.* at 177-78. McClean reiterated, "[Alexander] and [Appellant] started arguing. … Just like indirect stuff, just talking about like bad stuff. Like, he run the county. Nobody that's not from the county should be out here." *Id.* at 179. McClean testified that Appellant was approximately 20 yards from Alexander during this confrontation. *Id.* at 182.

At that time, McClean asked Appellant "to not get into it, like, because we had [] Parker's and [] Flemming's daughter in the car with us, so I asked him not to do nothing crazy." *Id.* at 179. From the surveillance video, McClean subsequently identified Appellant as shooting at Parker's Envoy. *Id.* at 180.

Flemming also testified at trial. *Id.* at 189. Flemming explained that around 7:30 p.m. on November 22, 2019, he went to Rodeway Inn's beer store with Parker, M.F., Alexander and McLean. *Id.* at 190-91. They arrived at the beer store in Parker's GMC Envoy. *Id.* at 191. Flemming testified that he never entered the beer store. *Id.* From the surveillance video, Flemming identified himself, Appellant and Alexander outside of the beer store having a "[l]ittle bit of words." *Id.* at 193. Flemming, believing there had been an

altercation inside of the store, asked, "What's going on? What's the problem?" *Id.* Flemming testified he stated, "Like, I hope there's no drama going on. Hope everything cool." *Id.* at 194. Afterwards, he again entered Parker's vehicle. *Id.* at 195.

When shown the video, Flemming testified that it depicted, "[s]omebody was shooting." *Id.* at 196. Flemming stated he heard one or two shots. *Id.* According to Flemming, he, M.F., Parker, Alexander and McLean were in or around the vehicle at the time of the shooting. *Id.* Flemming testified that he immediately exited the car and ran towards the shooter's vehicle, firing "shots back." *Id.* at 197. As he ran towards the shooter's vehicle, and before firing any shots himself, Flemming heard two gunshots fired at him. *Id.* at 199. Flemming, too, confirmed that only four people were inside of the shooter's vehicle. *Id.* at 202. He indicated that Appellant was in the back "behind the passenger seat." *Id.*

Reviewed in a light most favorable to the Commonwealth, the evidence is sufficient to sustain Appellant's convictions of aggravated assault under Sections 2702(a)(1) and 2702(a)(4). The surveillance video and testimony established Appellant fired his weapon at least twice at the GMC Envoy parked in the beer store's lot. As the trial court stated in its opinion,

> [a] long history of cases have found sufficient evidence for Aggravated Assault with a Deadly Weapon "even though it was impossible for the accused actually to cause either serious bodily injury or bodily injury[.]" ***Commonwealth v. Lopez***, 654 A.2d [at] 1152 … (firing bullets at an empty doorway was sufficient for a conviction of aggravated assault with a deadly weapon); ***see***

- 10 -

> ***also Commonwealth v. Rosado***, 684 A.2d 605, 607 (Pa. Super. 1996) (firing bullets into a window was sufficient to sustain a conviction despite fact that victims were unharmed); ***Commonwealth v. Holley***, 945 A.2d 241, 249 (Pa. Super. 2008) (concluding that evidence of a defendant pointing a gun and missing the shot was sufficient to support a conviction for aggravated assault).
>
> Here, the Commonwealth, through both video surveillance footage and direct testimony, provided evidence that Appellant had a verbal altercation with Alexander and Flemming, which began inside of Freddie's and continued into the parking lot. Video footage then shows Appellant get into a Honda, which drives past the Envoy. The video next depicts an arm reaching out of the back seat, where Appellant had been seated, wearing the same color sweatshirt Appellant had just been wearing, firing multiple shots in the direction of Alexander and Flemming. … This evidence is sufficient to support the jury's finding that Appellant attempted to cause serious bodily injury by way of firing his gun at Alexander and Flemming….

Trial Court Opinion, 5/18/23, at 10-11. We agree. Upon our review of the record, Appellant's challenge to the sufficiency of the evidence underlying his convictions of aggravated assault (18 Pa.C.S.A. § 2702(a)(1) and (4)) warrants no relief. **See** 18 Pa.C.S.A. § 6106; **Hall**, 830 A.2d at 543.

In his second issue, Appellant again challenges the sufficiency of the evidence underlying his conviction of aggravated assault – attempt to cause serious bodily injury.[3] Appellant's Brief at 17. Citing the trial court's dismissal

_____

[3] Appellant claims the trial court erred in not granting his demurrer to his aggravated assault charges. Appellant's Brief at 17. However, following the dismissal of the attempted homicide charges, and the denial of his demurrer to the remaining charges, Appellant presented a defense. "[W]hen a defendant does not rest following denial of a demurrer, but instead presents a defense, the correctness of the ruling on the demurrer is not preserved for

*(Footnote Continued Next Page)*

of his attempted homicide charges, Appellant asserts, "there is virtually no difference between a specific intent to kill and an intent to cause serious bodily injury. As such, the trial court erred by denying the demur to attempted aggravated assault where no injury occurred[.]" *Id.* at 18. Because the trial court dismissed the charges of attempted murder – specific intent to kill, Appellant claims it should have likewise dismissed the aggravated assault charges. *See id.* We disagree.

Initially, we observe that the crime of "attempted murder requires **a specific intent to kill**[.]" *Commonwealth v. Palmer*, 192 A.3d 85, 88 (Pa. Super. 2018) (emphasis added). Conversely, aggravated assault requires either an intent to inflict serious bodily injury, *see* 18 Pa.C.S.A. § 2702(a)(1); or an attempt to cause or intentionally or knowingly cause bodily injury with a deadly weapon, *see id.* § 2702(a)(4).

In its opinion, the trial court considered and rejected Appellant's claim that the dismissal of the attempted homicide charges required dismissal of the aggravated assault charges:

> Here, [the trial court] found that Appellant's conduct of firing his weapon in the direction of Fleming and Alexander, briefly after an altercation occurred, was sufficient to establish intent to cause serious bodily injury. However, "[t]here is no doubt that some

_____

appellate review; the proper procedure is to challenge the sufficiency of the evidence." *Commonwealth v. Zambelli*, 695 A.2d 848, 849 n.1 (Pa. Super. 1997) (citations omitted); *accord Commonwealth v. Johnson*, 192 A.3d 1149, 1154 (Pa. Super. 2018). We therefore address Appellant's claim as a challenge to the sufficiency of the evidence underlying his aggravated assault convictions.

- 12 -

acts which are intended to cause serious bodily injury fall short of an intent to kill." ***Commonwealth v. Palmer***, 192 A.3d 85, 93 (Pa. Super. 2018). This Court determined that the Commonwealth failed to establish the higher intent to kill, but that shooting in the direction of Alexander and Flemming after a verbal altercation was sufficient to establish Appellant's attempt to cause them serious bodily harm. As such, this claim is without merit and must be dismissed.

Trial Court Opinion, 9/11/23, at 8-9. We agree with and adopt the trial court's sound reasoning and conclusion. ***See id.*** Further, as stated above, the Commonwealth's evidence was sufficient to sustain Appellant's convictions of aggravated assault. Appellant's second issue warrants no relief.

In his third issue, Appellant challenges the sufficiency of the evidence underlying his multiple convictions of REAP, "where one bullet was the basis of multiple victims and convictions[.]" Appellant's Brief at 19. Appellant argues his sufficiency challenge

lies not with the reckless nature of his behavior in firing two shots, but rather in the impossibility of two reckless shots causing six convictions and six victims under reckless endangerment. Additionally, the same conduct that caused two victims for aggravated assault, caused six victims for [REAP], with no discernable differentiation in factual basis for the distinction.

***Id.*** at 25 (footnote omitted). Citing no authority, Appellant argues the evidence only established one count of REAP. ***Id.*** at 26. According to Appellant, "[t]he location of only one bullet over the top of the Envoy can be identified, as the other bullet traveled in an unknown direction and location." ***Id.*** Appellant asserts,

without testimony from other witnesses to the bullet, to their specific fear base on the bullet or its location and direction of

- 13 -

travel, the evidence is insufficient to establish [REAP].  []
Appellant requests that five counts of [REAP] be dismissed.

*Id.*

The trial court addressed and rejected Appellant's argument:

A person is guilty of REAP if he "recklessly engages in conduct
which places or may place another person in danger of death or
bodily injury."  18 Pa.C.S. [§] 2705.  "To sustain a conviction
under Section 2705, the Commonwealth must prove that the
defendant had an actual present ability to inflict harm and not
merely the apparent ability to do so."  ***Commonwealth v.
Hopkins***, 747 A.2d 910, 915-16 (Pa. Super. 2000).  "[T]he *mens
rea* for recklessly endangering another person is a conscious
disregard of a known risk of death or great bodily harm to another
person." ***Id.***  [D]ischarging a firearm near another person is
sufficient to support a conviction [for REAP].[4]  ***Commonwealth
v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009).  Moreover, the
simple act of brandishing a loaded firearm "provides a sufficient
basis on which a factfinder may conclude that a defendant
proceeded with conscious disregard for the safety of others, and
that he had the present ability to inflict great bodily harm or death.
***Commonwealth v. Peer***, 684 A.2d 1077, 1080 (Pa. Super.
1996).

Here, Appellant claims that because one bullet accounted for
multiple victims, the Commonwealth did not have sufficient
evidence to support the multiple counts of REAP.  This argument
has no merit.  Again, the Commonwealth presented evidence
showing Appellant shooting in the direction of Alexander and
Flemming as well as four additional individuals.  Firing a gun in

---

[4] In ***Hartzell***, this Court observed:

The act of merely pointing a loaded gun at another has been
deemed     sufficient     to     support     a     conviction     for
REAP, ***Commonwealth v. Reynolds***,  835 A.2d 720 (Pa. Super.
2003), as has the brandishing of a loaded handgun during the
commission of a crime.  ***Commonwealth v. Hopkins***, 747 A.2d
910 (Pa. Super. 2000).

***Hartzell***, 988 A.2d at 144.

the direction of six individuals placed each individual in danger of death or bodily injury. Appellant needn't have fired his gun six times to provide one bullet per victim, but rather one bullet put each and every individual in its path at risk. As such, this claim is without merit and must be dismissed.

Trial Court Opinion, 5/8/23, at 11-12 (some quotation marks omitted, footnote added). We agree and affirm on this basis with regard to Appellant's third issue. *See id.* Appellant's challenge to the sufficiency of the evidence underlying his REAP convictions warrants no relief.

In his fourth issue, Appellant claims the trial court improperly permitted the Commonwealth to ask him, during cross-examination, whether witnesses did not want to testify "because they're afraid of you[.]" Appellant's Brief at 26. Appellant argues he never "opened the door to reluctant witnesses on direct examination." *Id.* at 28. According to Appellant, the trial court improperly overruled his objection to this question, as no evidence regarding witnesses' failure to appear was presented to the jury. *Id.* at 29. Appellant claims this evidence caused him prejudice, as it was admitted without a curative instruction. *Id.*

> [T]he scope and limits of cross-examination are within the discretion of the trial judge[,] and we review the trial judge's exercise of judgment for a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Leap*, 222 A.3d 386, 390 (Pa. Super. 2019) (citations and quotation marks omitted).

- 15 -

In its opinion, the trial court addressed and rejected Appellant's claim:

> "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." ***Commonwealth v. Murphy***, 182 A.3d 1002, 1005 (Pa. Super. 2018).
>
> Here, Appellant chose to testify, exposing himself to cross examination by the Commonwealth and any accompanying risks. On direct, Appellant testified that someone else in the Honda, [who is now deceased,] had fired the gun. N.T. 05/11/2022, pp. 95-96. The Commonwealth suggested that Appellant named [that individual as the shooter] "because you can't name someone else from the neighborhood that's alive? Isn't that true?" ***Id.*** at 100. The Commonwealth used this line of questioning to suggest that cooperation with police is uncommon, and possibly even dangerous, **which Appellant denied**. ***Id.*** In an attempt to impeach Appellant on this assertion, the Commonwealth stated that three prior witnesses were reluctant to testify out of fear of Appellant. ***Id.*** Appellant opened the door to this evidence because he, through his testimony, made statements that created a false impression regarding a general willingness of people in his circle to cooperate with law enforcement. ***See Murphy***, 182 A.3d at 1005. This claim was a direct contradiction of testimony provided by Flemming, who had said he has been shot at over ten times because he testified as a witness in a separate matter over 10 years ago. N.T. 05/10/2022, pp. 209-12. As such, the Commonwealth merely walked through the door Appellant chose to open, and this alleged error has no merit as an issue raised on appeal.

Trial Court Opinion, 5/18/23, at 12-13. Upon review, we cannot conclude that the trial court abused its discretion in allowing the Commonwealth's cross-examination on this issue. ***See Leap***, 222 A.3d at 390. As such, Appellant's fourth issue merits no relief.

Finally, Appellant claims he was entitled to a mistrial and did not effectively waive his right to a mistrial. Appellant's Brief at 30. Appellant argues two bases for relief: (1) Gundy's invocation of his Fifth Amendment

right not to testify; and (2) Wheeler's testimony that Appellant was incarcerated with him. *Id.* at 30-31. Regarding Gundy's testimony, Appellant acknowledges he consented to foregoing a mistrial, but claims "the colloquy of [] Appellant concerning the mistrial over Gundy's invocation of his 5th [A]mendment right … was insufficient to be an effective waiver of the issue." *Id.* at 31. Regarding Wheeler's testimony, Appellant acknowledges his counsel failed to object and move for a mistrial. *Id.*

Once again, the trial court considered and rejected Appellant's claim:

> … The Commonwealth called Gundy to testify as to what he witnessed that day, and [Gundy] asked this [c]ourt if he could assert his Fifth Amendment right to remain silent. After Gundy consulted with counsel appointed by this Court, it was determined that there was no viable Fifth Amendment issue because Gundy's testimony would not criminally implicate him. N.T. 05/11/2022, p. 12. **Ultimately, Appellant consulted with Trial Counsel and, based on a compromise with the Commonwealth wherein questioning of Gundy would be extremely limited, Appellant decided to forego his right to move for a mistrial at that time.** *Id.* at 43. On the record, Appellant stated that he was voluntarily and willingly waiving his right to move for a mistrial, and further asserted that no one forced or coerced him to waive this right. *Id.* at 42-44. This colloquy was sufficient to indicate that Appellant properly waived his right to move for a mistrial in relation to Gundy's testimony.

> However, in his Concise Statement, Appellant improperly raises this issue in relation to both Gundy's testimony **and** Wheeler's testimony. "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made *when the event is disclosed*." Pa.R.Crim.P. Rule 605(B) (emphasis added). Failure to make a timely request for mistrial waives the issue. *See Commonwealth v. McAndrews*, 430 A.2d 1165, 1167 (Pa. 1981). This rule does not solely apply to the right to move for a mistrial, but it relates to any potential issue that could be addressed on appeal. "[I]ssues not raised in the lower court are

- 17 -

waived and cannot be raised for the first time on appeal." ***Commonwealth v. Agie***, 296 A.2d 741, 741 (Pa. 1972).

> After Appellant waived his right to move for a mistrial, he called Wheeler to testify on his behalf. Appellant now attempts to claim that, based on the content of Wheeler's testimony, his waiver of his right to a mistrial was insufficient. However, Appellant did not raise this issue in relation to Wheeler's testimony at trial. In order to preserve this issue for appeal, Appellant was required to make a second motion for a mistrial at the time Wheeler made mention of Appellant's incarceration. No such motion was raised, and Trial Counsel failed to object during the testimony, thus failing to preserve the issue. Furthermore, this alleged error has no merit because **the Commonwealth did not illicit this information; it was offered by Appellant's witness.** Appellant's failure to properly prepare his witness does not give him the ability to seek a mistrial….

Trial Court Opinion, 5/18/23, at 13-14 (emphasis added). Our review confirms that Appellant waived this issue at trial. ***See*** N.T., 5/11/22, at 43; ***see also*** Pa.R.A.P. 302(a) (stating an issue cannot be raised for this first time on appeal). As the record confirms Appellant's waiver of any challenge to the testimony of Gundy and Wheeler, his fifth issue warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2024